Rockingham,
No. 5215.

JOSEPH G. SAWTELLE *v.* HARRY A. TATONE *& a.*

GRACE K. HICKEY, *Indiv. and as Adm'x & a.* *v.* SAME.

Argued April 8, 1964.
Decided June 2, 1964.

*Burns, Bryant & Hinchey* and *E. Paul Kelly* (*Mr. Kelly* orally), for the plaintiffs.

*Cregg & Cregg* (of Massachusetts), *Perkins, Holland & Donovan,* and *Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the defendants.

DUNCAN, J. These are two equity actions arising out of the sale of certain land in Windham lying between the Range Road, so-called, and Cobbett's Pond, all of which was formerly owned by the decedents Florence A. and Fred G. Sawyer as joint tenants. While they lived the property was known as the Sawyer farm. It was roughly divided into three parts. The northerly section bordering on the pond was laid out by the Sawyers for development, and commencing in 1950 lots had been sold from time to time to various purchasers including the defendants Tatone, with rights of way to the pond, and access to the public highway by means of a right of way across the land south of the development. A wooded section of about eight acres lay south of the development and northerly of a stone wall bordering the most southerly tract which was open land upon which the Sawyer house was located.

On May 9, 1956 the Sawyers, by three deeds, purported to convey to the Tatones as husband and wife the remaining subdivision lots, and the eight-acre tract lying south of the development. By these deeds to the Tatones rights of way to reach the Range Road were similarly granted across the open land to the south retained by the grantors.

Fred G. Sawyer died on May 13, 1956, and the plaintiff Mrs. Grace K. Hickey, a sister of Florence A. Sawyer, was appointed her guardian in July 1956. The following month the plaintiff Hickey was appointed administratrix with will annexed of the estate of Fred G. Sawyer and following Florence A. Sawyer's death on December 24, 1956, Mrs. Hickey was appointed administratrix of Florence's estate in April 1957.

As administratrix of the estate of Florence A. Sawyer, who was left all of Fred's estate by his will, Mrs. Hickey conveyed under a license from the probate court all the right, title and interest of the Florence A. Sawyer estate in the Sawyer farm to the plaintiff Sawtelle by deed dated October 22, 1958. This deed to Sawtelle described the original farm lying between the highway and the pond by its original description and "excluded . . . the portions conveyed to . . . Tatone" and four other grantees of lots in the development who are not involved in this litigation.

The plaintiff Sawtelle thus became the owner of the open land between the highway and the wooded tract bordering it on the north, which was conveyed to the Tatones in May 1956. Thereafter Sawtelle asserted rights in the right of way in the subdivision bordering the pond, which the Tatones disputed.

On January 28, 1959, Sawtelle brought a bill in equity and petition for declaratory judgment against the Tatones, to determine the rights of the parties. The defendants filed an answer and cross petition seeking to enjoin Sawtelle from interfering with their use of the rights of way. On May 25, 1959 a temporary injunction was entered restraining Sawtelle from using the right of way near the pond, and all parties from conveying any interest in or title to the land formerly known as the Sawyer farm.

By bill in equity dated June 5, 1959 Mrs. Hickey, individually and as administratrix of the Florence A. Sawyer estate, the other heirs of Florence A. Sawyer, and Sawtelle brought a second bill in equity alleging that Mrs. Sawyer had been incompetent when the deeds of May 9, 1956 were given to the Tatones

and that the deeds were likewise invalid for fraud and conspiracy between Harry A. Tatone and Fred G. Sawyer.

The bills in equity were tried together and the Court (*Sullivan, J.*) returned findings and rulings in writing in each case. In the action brought by Sawtelle alone, seeking injunctive relief, the Court ruled that Sawtelle had no right in any capacity to use the right of way across the eight-acre tract conveyed to the Tatones or the rights of way northerly thereof giving access to the pond. Sawtelle's bill of exceptions in this action was allowed by the Presiding Justice.

In the action brought by the heirs and Sawtelle to set aside the deeds of May 9, 1956, the Trial Court found that Mrs. Sawyer was incompetent to execute the deeds, and ruled that her conveyance was ineffective, but that the deeds operated to convey the undivided half interest of Fred G. Sawyer. Accordingly the Court ordered that the defendants Tatone be reimbursed in the sum of $4,000, or half the purchase price, plus the taxes paid by them upon the half interest of Florence A. Sawyer. Bills of exceptions of both the plaintiffs and the defendants in this action were allowed by the Presiding Justice.

In view of the nature of the issues presented, the action which was brought last will be first considered. In this action the defendants Tatone have transferred no exceptions to the finding that Mrs. Sawyer was incompetent to convey her undivided half interest, since there was evidence to support this finding. The issues between the parties relate to the legal consequences of this finding and to the rulings of the Court with reference thereto. The plaintiffs assert that the Court erred in ruling that the deeds in question were nevertheless effective to convey the interest of Fred G. Sawyer. The defendants seek to sustain this ruling of the Trial Court, but contend that there was error in the ruling that the plaintiffs were not barred from obtaining relief by reason of laches and ratification of the conveyances. If the latter contention is sound other issues raised in this action become immaterial. Accordingly this contention will first be considered.

The Court ruled in accordance with the defendants' requests that "one who has a right to rescind a deed will lose it if, after acquiring knowledge of the facts giving rise to the right, he delays unreasonably in notifying the other party of his intention to rescind." See Restatement, Contracts, *s.* 483. It found as requested by defendants that the plaintiffs "did not notify the defendants of their intention to rescind the three deeds of

May 9, 1956 until May 25, 1959"; but denied a requested ruling that "under all the circumstances [this] was an unreasonable delay," and ruled that it was not.

Similarly the Court found in accordance with the defendants' request that "the plaintiff Hickey as guardian and later as administratrix . . . after knowledge of facts giving rise to a right of rescission of the three deeds of May 9, 1956, expended for estate purposes all or a substantial part of the funds paid for the deeds by the defendants, Tatone, and distributed any balance thereof to the heirs." The Court however declined to rule that "such action amounts in law to a ratification of the three deeds and will prevail over any intention to rescind on her part which was not communicated to defendants until afterward." Instead, the Court ruled that "such action, in view of all the evidence, does not amount in law to a ratification of the three deeds."

Additionally, the Court found and ruled that the plaintiffs were not guilty of laches, that the petition was brought seasonably and in good faith, and the plaintiffs "never knowingly, willingly, or voluntarily confirmed or ratified the conveyance" to the Tatones.

In so doing, the Court denied the defendants' request for rulings that the plaintiffs were barred by laches, the delay being unexplained and unreasonable under all the circumstances; that no reasonable excuse for the delay was given; and that the defendants' position was prejudiced by the delay. To the action of the Court here outlined, the defendants duly excepted.

Since the deed of a mentally incompetent person is not void, but is regarded as voidable only (*O'Grady* v. *Deery*, 94 N. H. 5), the deeds executed by Florence A. Sawyer on May 9, 1956 were subject to ratification by her should she recover her competence, or by her guardian (*Finch* v. *Goldstein*, 245 N. Y. 300) or heirs, after the facts were known. The right to sue for the rescission or cancellation of the deed of a mentally incompetent person is commonly considered to vest in the heirs or devisees at the death of the incompetent. *Kressler* v. *Flynn*, 323 Mass. 610; *Brown* v. *Brown*, 209 Mass. 388, 394; *Wilcox* v. *Forbes*, 173 Mass. 63; *Hovey* v. *Hobson*, 53 Me. 451. See 29 Am. Jur. "Insane Persons," *ss.* 90, 98; 13 Am. Jur. 2d 538, Cancellation of Instruments, *s.* 57; Annots. 2 A.L.R. 431; 33 A.L.R. 51; 2 Williston on Contracts (3d *ed.*) *s.* 253.

The principle applicable to this case was stated in *Bechard*

v. *Amey*, 82 N. H. 462, 471, thus: "A party 'cannot treat the contract as binding and as rescinded at the same time, and after he has elected to stand by the contract and receive the benefits it confers on him, and has thus ratified and confirmed it, he cannot thus rescind and repudiate it'. *Willoughby* v. *Moulton* [47 N. H. 205, 208]." As was said in *Bullard* v. *Moor*, 158 Mass. 418, 424: "Ratification is not estoppel, but it is election, a different conception. . . . When it operates, it operates not against the person ratifying, but on the contract, making it as if perfect from the beginning."

In the case before us, the Trial Court expressly found that the plaintiff Hickey, who as a sister to Mrs. Sawyer was heir to one-third of her estate, while acting "as guardian and later as administratrix . . . after knowledge of facts giving rise to a right of rescission of the . . . deeds of May 9, 1956, expended for estate purposes all or a substantial part of the funds paid for the deeds by the [defendants] Tatone, and distributed any balance thereof to the heirs."

We think that this finding is decisive of the plaintiffs' rights to maintain their bill. As was held in *Weeks* v. *Robie*, 42 N. H. 316, 320, a person seeking to rescind "can not treat the contract as binding and rescinded at the same time. . . . Where [he] does any act which amounts to . . . a ratification . . . after . . . full knowledge of all the facts and circumstances . . . he can not afterward elect to treat it as void." Under such circumstances, "payment and acceptance of the compensation are decisive of an election to affirm." *Arnold* v. *Richmond Iron Works*, 67 Mass. 434, 439, 440; *Walker* v. *McLaurin*, 227 N. C. 53; Restatement, Contracts, s. 484.

The plaintiffs suggest that since they did not learn until shortly before the bill was filed of certain deeds which were partially executed on May 9, 1956, but never delivered, they acted with reasonable expedition in asserting a right to rescind. The right of rescission did not depend however upon knowledge of the existence of these documents. Upon the facts found by the Trial Court, the plaintiff Hickey was bound to exercise her right of rescission as soon as the essential facts were known, which was at most within a few months from the date of the deeds. Having instead dealt with the proceeds of the transaction as property of her ward and of the estate with knowledge of the facts, she could not afterward repudiate the transaction although she "afterwards discovers farther circumstances connected with [it]."

*Willoughby* v. *Moulton, supra,* 47 N. H. 205, 208. See also, Restatement, Contracts, *s.* 93.

We hold therefore that the ruling of the Trial Court, that the plaintiff Hickey's action did "not amount in law to a ratification of the three deeds" was error.

In addition to Mrs. Hickey, five other plaintiffs are heirs of Mrs. Sawyer, being entitled as nieces to share the remaining two-thirds interest in any real estate owned by her. If the conduct of Mrs. Hickey, as guardian or administratrix, in ratifying the deeds to the defendants were thought not to be binding upon them, although they consented to the issue to her of a license by the probate court to sell the real estate (see 29 Am. Jur. 210, Insane Persons, *s.* 90, *supra,* note 19), yet they are likewise precluded from maintaining the action by reason of their failure to advance "any explanation for the apparent delay in seeking relief." *O'Grady* v. *Deery,* 94 N. H. 5, 7.

As previously noted, the failure to learn of the unused deeds which were defectively executed on May 9, 1956 was no adequate explanation for the delay of three years which preceded the bringing of the bill. It may fairly be presumed that the heirs were aware when Mrs. Sawyer's estate was being administered that she had conveyed away the real estate presently standing in the names of the defendants. "If such were the case, it could not fairly be found, in the absence of a satisfactory excuse, that the plaintiffs were diligent in bringing the bill . . . ." *O'Grady* v. *Deery, supra,* 7. Since no satisfactory excuse was advanced at the trial, the rights of these plaintiffs are foreclosed as a matter of law by their laches (*O'Grady* v. *Deery, supra*), over the three-year period during which the defendants expended money upon the property conveyed to them, and were otherwise adversely affected by the death of the attorney who prepared the deeds and supervised their execution. See 19 Am. Jur. 347, 355-356, Equity, *ss.* 502, 511-513; 2 Pomeroy, Equity Jurisprudence (5th *ed.*) *s.* 419b.

In view of the record, the Trial Court erred in ruling that the plaintiffs were not guilty of laches, and in denying the defendants' request for a ruling that they were barred thereby, the delay being unreasonable, and the defendants' position having been prejudiced thereby.

The plaintiffs argue that the defendant Harry A. Tatone "cannot now be heard to set up an estoppel" against the Sawyer heirs because he was fully aware of the circumstances surrounding the transaction of May 9, 1956; and that he should not be

permitted thus "to retain the fruits of his own wrong." To the extent that estoppel is an element of the doctrine of laches (see 19 Am. Jur. 637, 638, Estoppel, ss. 38, 39), the plaintiffs' argument is precluded by the finding and ruling of the Trial Court that the defendants "were not guilty of any fraud, in the procurement of the three deeds of May 9, 1956 . . . and acted in good faith in connection with the transaction." While the plaintiffs excepted to this finding and ruling, we are satisfied that it could properly be made upon the evidence, and the exception is overruled.

The defendants' exceptions to the rulings with respect to ratification and laches are sustained, and the findings made by the Court require judgment for the defendants.

In the action brought by Sawtelle to establish rights in the rights of way the Trial Court decreed that he had no right in any capacity, public or private, to use the rights of way in the development bordering Cobbett's Pond or the right of way across the eight-acre tract owned by the defendants by virtue of one of the conveyances of May 9, 1956.

The plaintiff excepted to the findings and rulings upon which the decree was based and to the denial of certain requested findings and rulings.

The Trial Court found and ruled that "on November 12, 1959 [the plaintiff] filed a voluntary dismissal of his petition . . . but the [defendants] have not waived their claims and prayer for cross-relief as set forth in their answer." At the same time the Court denied the plaintiff's request for a finding and ruling that the plaintiff "took a voluntary dismissal . . . and, since Tatones failed to request affirmative relief no issues are left pending before this court."

In this action of the Trial Court we see no error. The defendants by their answer denied that Sawtelle acquired any right in the rights of way and prayed that he "be enjoined and restrained from interfering with the use by [them] of the rights of way referred to . . . ." Since the answer clearly sought affirmative relief on behalf of the defendants, the Trial Court properly refused to permit the voluntary dismissal of the action. *Moylan* v. *Lamothe*, 92 N. H. 299; *Dorney* v. *Dorney*, 98 N. H. 159.

The finding and ruling that the plaintiff Sawtelle had no right to use the rights of way was warranted by the evidence. The various lots situated in the subdivision bordering the pond were deeded by the Sawyers, commencing in 1950, by nine deeds which preceded the deeds of May 9, 1956 to the defendants

Tatone. In none of these conveyances was any right of way reserved by the grantors. The various lots in the subdivision were bounded in part by rights of way shown upon a recorded plan, and the deeds uniformly provided that the "premises are conveyed together with a right of way from the public highway known as Range Road, as now existing, through and over other land of this grantor to the premises hereby conveyed."

The defendants by divers deeds commencing on May 29, 1952 acquired nineteen of the subdivision lots, seven of which were conveyed by the deeds of May 9, 1956. With respect to lot No. 23, which was conveyed by separate deed, the Sawyers reserved "the right to the full use and occupation and enjoyment of said parcel for and during the remainder of their natural lives, or the survivor of them." Except for an implied right by virtue of this deed to use the rights of way for their joint lives, the Sawyers reserved no rights over any part of the subdivision for the benefit of their remaining land at the time of any of the conveyances.

The conveyance to the defendants of the eight-acre tract lying south of the subdivision was "subject to the existing right of way over the same" and granted a right of way over the balance of the farm southerly to the highway.

Thus it is plain from the conveyances that at their decease the only rights of way which the Sawyers retained were those appurtenant to lot 23, which were thereupon extinguished. Hence the plaintiff Sawtelle could acquire by virtue of his deed from the administratrix no interest in any rights of way north of the southerly boundary of the defendants' eight-acre tract.

The various deeds to the lots in the subdivision which described the several lots as bounded in part by "a right of way as shown on said Plan" operated to convey to the grantees the fee simple in the adjoining rights of way. *Harrington* v. *Manchester*, 76 N. H. 347; *Manchester* v. *Hodge*, 75 N. H. 166. Similarly easements in rights of way not bounding the lots, which existed by implication in consequence of the conveyances with reference to the recorded plan existed only for the benefit of the purchasers of the lots in the subdivision. *Douglass* v. *Company*, 76 N. H. 254. There was no basis for a finding that the rights of way had been set apart for the use of the public generally, and the evidence indicated that they had not. *McCleary* v. *Lourie*, 80 N. H. 389.

The Trial Court properly ruled in accordance with the principles laid down by the cited cases. The plaintiff's exceptions to the findings and rulings on the merits are overruled.

*In Sawtelle v. Tatone, plaintiff's exceptions overruled; remanded. In Hickey v. Tatone, judgment for the defendants.*

All concurred.