Frank B. ABBADESSA,
Plaintiff, Appellant,

v.

MOORE BUSINESS FORMS, INC.,
Defendant, Appellee.

Robert D. MARIOTTI, Plaintiff,
Appellant,

v.

MOORE BUSINESS FORMS, INC.,
Defendant, Appellee.

Nos. 92–1196, 92–1197.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1992.

Decided March 2, 1993.

James H. Schulte with whom Burns, Bryant, Hinchey, Cox & Schulte, P.A. Dover, NH, was on brief, for plaintiffs, appellants.

Edward M. Kaplan with whom William D. Pandolph and Sulloway Hollis & Soden, Concord, NH, were on brief, for defendant, appellee.

Before SELYA, Circuit Judge, HIGGINBOTHAM,* Senior Circuit Judge, and CYR, Circuit Judge.

A. LEON HIGGINBOTHAM, Jr., Senior Circuit Judge.

This is an appeal from an order of summary judgment in favor of defendant, Moore Business Forms, Inc., and against plaintiffs, Frank B. Abbadessa and Robert D. Mariotti. Abbadessa and Mariotti sued Moore for wrongful termination of employment. Moore moved for summary judgment, arguing that Abbadessa and Mariotti each agreed in writing at the time of their termination to release Moore from any claims arising from plaintiffs' employment or termination of employment. Plaintiffs opposed the motion for summary judgment, each alleging that the agreement to release their claims against Moore had been signed under economic duress.

The United States district court for the District of New Hampshire, applying New Hampshire law, granted Moore's summary judgment motion as to both Abbadessa and Mariotti. The court, in separate orders, found, as a matter of law, that even if Abbadessa and Mariotti had signed their respective agreements under duress, each also subsequently ratified the agreements by failing to repudiate them promptly and by accepting the benefits that flowed under the agreements.

Because we agree that Abbadessa and Mariotti ratified their respective resignation agreements, we will affirm the district court's orders of summary judgment in favor of Moore. This is a diversity action. Both Abbadessa and Mariotti are citizens of New Hampshire. Moore is a Delaware corporation with its principal place of business in Illinois. The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

I

*Frank B. Abbadessa*

Frank B. Abbadessa began working as an accountant for Moore Business Forms, Inc. in December 1973. By 1988, Abbadessa had advanced to the managerial position of Comptroller of Moore's Locust Street plant in Dover, New Hampshire. On January 19, 1988, in a meeting between Abbadessa, R.J. Barth, the General Manager of the Locust Street plant, and Brian Groves, the Director of Human Resources, Moore requested Abbadessa to resign and to sign a resignation agreement. Under the resignation agreement, Moore would provide Abbadessa with the following benefits from January 19, until April 30, 1988: (1) compensation in the amount of $4,611.75 per month; (2) payment for any vacation owed Abbadessa for 1988; (3) continued participation in Moore's Healthcare plan, Dental Plan, and Group Insurance Plan, with an option to extend participation after April 30, 1988, if Abbadessa made quarterly payments; and (4) payment by Moore for outplacement counseling services to assist Abbadessa in finding other employment. The agreement also provided that Abbadessa and Moore released each other from any other claims or obligations arising from Abbadessa's employment with, and termination by, Moore.

Moore informed Abbadessa that he was being asked to resign because his performance had not been satisfactory. Further,

* Of the Third Circuit, sitting by designation.

Moore made clear to Abbadessa that he could either resign with the benefits provided under the agreement or not resign and face the possibility of being fired without any benefits. Abbadessa did not sign the resignation agreement during the January 19 meeting. He considered the agreement for two weeks and, in early February, he returned it signed, backdated to January 20. During the interval between the January 19 meeting and the time in early February when he signed the agreement, Abbadessa sought payment of his vacation pay from Moore. Moore apparently refused to pay any benefits until Abbadessa signed the resignation agreement. According to Abbadessa, he finally signed the agreement because his lack of financial resources left him no other choice.

On May 27, 1988, Abbadessa requested that Moore extend payment of the benefits provided under the January 18 agreement which had expired on April 30, 1988. Abbadessa requested the extension because he had not been able to find other employment and had run out of money. Moore agreed to extend benefits to Abbadessa for one more month and amended the January 18 agreement to reflect that Abbadessa would receive the benefits provided under the original agreement through May 31, 1988. Abbadessa signed the amended agreement and dated it June 6, 1988. Toward the end of June 1988, Abbadessa again requested that Moore grant him a further extension of his benefits. Moore agreed to provide Abbadessa with benefits covering half the month of June. Finally, in July Abbadessa made one more request for extension of his benefits. This time Moore refused.

### Robert D. Mariotti

Robert Mariotti began working as a salesman for Moore in December 1970. By 1988, Mariotti had advanced to the managerial position of Operations Manager for Moore's Locust Street plant. On May 24, 1988, in a meeting between Mariotti, Barth and Groves, Moore requested Mariotti to resign and to sign a resignation agreement similar to the one presented to Abbadessa on January 18, 1988. The agreement provided similar benefits as those paid to Abbadessa and covered the period of May 24 to August 31, 1988: (1) compensation in the amount of $5,296.60 per month; (2) payment for any vacation owed Mariotti for 1988; (3) continued participation in Moore's Healthcare Plan, Dental Plan, and Group Insurance Plan, with an option to extend participation after August 31, 1988, if Mariotti made quarterly payments; and (4) payment by Moore for outplacement counseling services to assist Mariotti in finding other employment. The agreement also provided that Moore and Mariotti released each other from any other claims or obligations arising from Mariotti's employment with, or termination by, Moore.

As with Abbadessa, Moore informed Mariotti that he was being asked to resign because his performance had not been satisfactory. Mariotti was also presented with the choice of resigning with benefits or facing the possibility of being terminated without benefits. After thinking about the agreement for two days, Mariotti returned it signed on May 26, 1988. Mariotti claimed that he signed the agreement under financial pressure and that, being aware of Abbadessa's experience with Moore, he understood that he would receive no benefits until he signed the agreement.

### Procedural Background

On September 21, 1988, Abbadessa and Mariotti wrote to counsel for Moore that "they believed they had been terminated without cause in violation of the established policies and procedures of Moore and that they had signed the letters of resignation under duress." On April 11, 1989 Abbadessa and Mariotti brought separate actions for breach of employment contract against Moore in New Hampshire's Strafford County Superior Court. Plaintiffs, in their separate complaints, alleged that Moore issued written policies, providing that employees would not be terminated except for cause and then only after being made aware of deficiencies in their job performance and given the opportunity to correct those deficiencies. According to plaintiffs, these written policies constituted an enforceable employment contract under

New Hampshire law, which Moore breached by terminating plaintiffs without just cause and without giving plaintiffs the opportunity to correct what Moore deemed to be deficiencies in their job performance.

On May 5, 1989, both actions were removed to the United States district court for the District of New Hampshire on Moore's petition pursuant to 28 U.S.C. § 1441. On September 9, 1989, Moore moved for summary judgment as to the claims of both Abbadessa and Mariotti. Moore argued that the written policy upon which Abbadessa and Mariotti relied, which stated that employees would not be terminated except for cause, had been replaced by a subsequent policy issued during plaintiffs' terms of employment. The new policy did not provide that employees would not be terminated except for cause. As such, Moore maintained, there existed no enforceable employment contract between plaintiffs and Moore. In any event, Moore continued, the resignation agreements signed by Abbadessa and Mariotti released Moore from any and all liability arising from plaintiffs' employment with, or termination by, Moore.

Abbadessa and Mariotti opposed the motions for summary judgment. They argued that they never received notice of the change of policy. They also argued that they never received any consideration for the new policy, and that New Hampshire law does not permit an employer to unilaterally modify conditions of employment to the detriment of an employee in the absence of new consideration to the employee. As to Moore's claim that they had released any right to sue, Abbadessa and Mariotti argued that their respective resignation agreements were invalid because they had signed the agreements under economic duress.

On October 25, 1989, the district court denied Moore's motion for summary judgment as to Mariotti. On November 7, 1989, the court denied Moore's motion for summary judgment as to Abbadessa. The court employed the same reasoning to deny both motions. According to the court, Moore's motions for summary judgment presented three issues: (1) whether Moore's initial personnel policy represented an enforceable contract; (2) if it was an enforceable contract, whether it was amended by the subsequent policy; and (3) whether Abbadessa and Mariotti signed their respective resignation agreements under duress. In denying Moore's motions, the court concluded that all three questions involved genuine issues of material fact which would have to be decided at trial.[1]

On August 20, 1991, Moore renewed its motion for summary judgment as to Abbadessa, and the next day, on August 21, 1991, Moore renewed its motion for summary judgment as to Mariotti. This time, Moore argued that even if Abbadessa and Mariotti had signed their resignation agreements under duress, they had subsequently ratified the agreements by failing to repudiate promptly and by accepting all benefits that flowed under the agreements. Abbadessa and Mariotti, in a joint memorandum, raised three grounds to defeat Moore's motions for summary judgment. First, plaintiffs argued that the doctrine of the "law of the case" precluded the district court from considering Moore's renewed motions. Second, plaintiffs argued that Moore had not pleaded the affirmative defense of ratification in its answer or in its original motions for summary judgment and that, pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, an affirmative defense which is not pleaded is waived. Finally, plaintiffs maintained that there were genuine issues of material fact as to whether they were capable of ratifying the resignation agreements.

On January 9, 1992, in two separate orders, the court granted Moore's motion for summary judgment as to Abbadessa and Mariotti. The court rejected plaintiffs' "law of the case" and "waiver of unpleaded affirmative defense" arguments, and con-

---

**1.** The case of *Robert Mariotti v. Moore Business Forms* was originally assigned to Judge Loughlin, while the case of *Abbadessa v. Moore Business Forms* was assigned to Judge Devine. Subsequent to the denial of Moore's first motions for summary judgement, both cases were reassigned to Judge Stahl's calendar.

cluded that, under New Hampshire law, plaintiffs had indeed ratified their respective resignation agreements and that Moore was entitled to summary judgment as a matter of law.

Abbadessa and Mariotti now appeal, raising two of the grounds that were before the district court. Specifically, plaintiffs maintain that the "law of the case" doctrine precluded the district court from ruling on Moore's renewed motion for summary judgment, and that there were genuine issues of material fact as to whether plaintiffs were capable of ratifying the resignation agreements.

## II

Our review of the district court's orders for summary judgment is plenary. *United States v. One Parcel of Real Property with Bldgs*, 960 F.2d 200, 204 (1st Cir. 1992). A Rule 56 motion for summary judgment will only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In a diversity action the substantive law of the forum state determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Here, New Hampshire substantive law will determine if plaintiffs raised genuine issues of material fact as to whether they ratified their respective resignation agreements. But first, we turn to the question of whether the doctrine of the "law of the case" precluded the district court from ruling on Moore's renewed motion for summary judgment.

### A.

Under the doctrine of the "law of the case", a decision on an issue of law made by the court at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation except in unusual circumstances. *FCC v. WOKO, Inc.*, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204 (1946); *U.S. v. Rivera–Martinez*,

931 F.2d 148, 151 (1st Cir.1991) *Piazza v. Aponte Roque*, 909 F.2d 35, 38 (1st Cir. 1990). 1B J. Moore, Federal Practice ¶ 0.404[1] (1980).

Here, the district court, in denying Moore's initial motions for summary judgment, decided that there were genuine issues of material fact as to whether Abbadessa and Mariotti were under such economic duress at the time they signed the resignation agreements as to render the agreements voidable. In its renewed motions for summary judgment, Moore argued that, even if Abbadessa and Moore signed the agreements under the sort of economic duress which would render the agreements voidable, Abbadessa and Mariotti had nonetheless ratified the agreements by their subsequent conduct. The issue of whether Abbadessa and Mariotti ratified the agreements is one which the district court did not consider, much less decide, in ruling on Moore's initial motions for summary judgment.

We have stated in this circuit that the doctrine of the "law of the case" "merely expresses the practice of courts generally to refuse to open what has been decided." *Piazza*, 909 F.2d at 38. The issue raised in Moore's renewed motions for summary judgment was never decided by the district court. Accordingly, the district court was not precluded from considering whether Abbadessa and Mariotti ratified their respective resignation agreements.

### B.

In New Hampshire, contracts signed under economic duress are voidable. *King Enterprises v. Manchester Water Works*, 122 N.H. 1011, 453 A.2d 1276 (1982); *Cheshire Oil Co. v. Springfield Realty Corp.*, 118 N.H. 232, 385 A.2d 835 (1978). In the words of the Supreme Court of New Hampshire: "the payment of money or the making of a contract might be under such circumstances of business necessity or compulsion as will render the same involuntary and entitle the party so coerced to recover the money paid or ex-

cuse him from performing the contract." *Cheshire Oil Co.*, 385 A.2d at 838.

■ In order to be "excused" from performing the contract, a party relying on a theory of business compulsion or economic duress must demonstrate four elements. First, the party relying on economic duress must have involuntarily accepted the terms of another. "It must appear that consent was actually induced by the pressure applied and would not have been given otherwise." *Id.* 385 A.2d at 839, *quoting Morrill v. Amoskeag Sav. Bank*, 90 N.H. 358, 365, 9 A.2d 519, 525 (1939). Second, "the coercive circumstances must have been the result of the acts of the opposite party." *Cheshire Oil Co.*, 385 A.2d at 839. Third, "the pressure must have been wrongful." *Id.* An act or threat of an act may be wrongful "although the act or threat is not criminal or tortious or in violation of a contractual duty." *Id.* Fourth, "circumstances must have permitted no other alternative but to accept the terms of another if there is to be a finding of business compulsion." *Id.* Thus, if the party relying on the theory of economic duress "had a legal remedy adequate to redress or compensate for the injury threatened, the threat will not amount to duress." *Id.*

Given the above definition of economic duress, there are, as the district court found, disputed issues of material fact as to whether Abbadessa and Moore satisfied the four elements of duress. Specifically, looking at the facts in the light most favorable to plaintiffs, it is disputed whether the "coercive circumstances" surrounding the signing of the resignation agreements were "the result of acts of" Moore. Abbadessa and Mariotti claim that Moore created "coercive circumstances" by refusing to negotiate any of the terms of the agreements and by withholding benefits plaintiffs were entitled to until they signed the agreement.

It is further disputed whether the choice given by Moore to Abbadessa and Mariotti of resigning with benefits or not resigning and risking termination without benefits was "wrongful." Abbadessa and Mariotti claim that Moore's bargaining position was wrongful because it was done in bad faith. It is finally disputed whether Abbadessa and Mariotti were left with "no other alternatives but to accept the terms" proposed by Moore. Abbadessa and Mariotti claim that they were not fully aware of any internal appeal procedures available to them at the time they were presented with the requests for them to resign. They also claim that they were in no financial or mental shape to begin court actions.

Therefore, assuming for purposes of summary judgment that Abbadessa and Mariotti signed the agreements under duress, the question now becomes whether Moore is nonetheless entitled to judgment as a matter of law because Abbadessa and Mariotti ratified the agreements by their subsequent actions.

■ In New Hampshire, voidable contracts are subject to ratification. *Sawtelle v. Tatone*, 105 N.H. 398, 201 A.2d 111, 115 (1964). Since a contract executed under economic duress is voidable it is also subject to ratification. New Hampshire has never specifically identified the circumstances under which a contract executed under economic duress will be considered to have been ratified. But generally, a voidable contract will be deemed to have been ratified when the party who is entitled to avoid the contract "does any act which amounts to a ratification after full knowledge of all the facts and circumstances." *Id.* Acts amounting to ratification are payment or acceptance of the benefits of the contract and failure to repudiate the contract promptly. *Id.*[2] As the Supreme

2. *See also Hillside Assoc. of Hollis, Inc. v. Maine Bonding & Casualty Co.*, 135 N.H. 325, 605 A.2d 1026 (1992) (voidable insurance contract between insurance agent and construction company based on mutual mistake was not ratified when insurance company promptly notified construction company of mistake); *Derouin v. Granite State Realty, Inc.*, 123 N.H. 145, 148, 459 A.2d 231, 233 (1983) (voidable land sale contract based on mutual mistake was ratified because purchaser had performed significant improvements to property and property could not be returned to seller in substantially the same condition in which purchaser received it); *Michael v. Rochester*, 119 N.H. 734, 736, 407 A.2d 819, 821 (1979) (city ratified initially invalid construction contract for building a water main when it failed to notify the contractor before

Court of New Hampshire has stated: "A party cannot treat the contract as binding and as rescinded at the same time, and after he has elected to stand by the contract and receive the benefits it confers on him, and has thus ratified and confirmed it, he cannot thus rescind and repudiate it." *Bechard v. Amey*, 82 N.H. 462, 471, 136 A. 370, 375 (1926).

█ Here, both Abbadessa and Mariotti sought to treat their resignation agreements as "binding and rescinded at the same time." Both accepted the benefits the agreements conferred on them and neither attempted to repudiate the agreements promptly. Abbadessa considered the agreement for two weeks before signing it. After his benefits under the January 19 agreement had expired, Abbadessa requested that Moore extend him benefits on three separate occasions. Moore acceded to two of these requests and refused to extend added benefits on Abbadessa's third and final request. So, from February 1988 until April 1988, Abbadessa treated the agreement as binding by accepting the benefits Moore had promised. Moreover, from April 1988 until June 1988, Abbadessa further ratified the original agreement by making three separate requests that Moore extend benefits which were not owed under the agreement. It was not until after Moore had refused additional extensions of benefits that Abbadessa notified Moore's counsel by letter in July 1988 that he had signed the agreement under duress. Finally, even after Abbadessa had filed his suit against Moore, at no point did he attempt to return to Moore the benefits of the agreement which he now claims he signed under duress.

Similarly, Mariotti considered his agreement for two days before signing it. From May 1988 until August 1988, Mariotti continued to receive the benefits under the agreement. Even after Mariotti supposedly wrote to Moore Counsel in July 1988 that he had signed the agreement under the duress, he continued to received the bene-

fits under the agreement for August 1988. As with Abbadessa, even after having filed suit against Moore, at no point did Mariotti attempt to return to Moore the benefits of the agreement which he now claims he signed under duress.

The Supreme Court of New Hampshire has written that "a person seeking to rescind cannot treat the contract as rescinded and binding at the same time." *Sawtelle*, 201 A.2d at 115. By accepting the benefits of their respective resignation agreements and by failing to notify Moore promptly that they intended to repudiate the agreements, Abbadessa and Mariotti treated the agreements as binding. After having done so, they now wish to treat the agreements as rescinded. That, under New Hampshire law, they may not do.

Abbadessa and Mariotti argue that they could not have possibly ratified the agreements until after the duress was removed. Since, according to Abbadessa and Mariotti, they signed the agreements under duress because basically, by asking them to resign, Moore caused them to be in desperate need for money, we understand plaintiffs' argument to mean that duress would have been removed when they were no longer in such dire financial straits. But, as we stated at the outset of our discussion, the issue in this case is whether appellants raised genuine issues of material fact as to whether they ratified their respective agreements. Stated another way: whether they raised genuine issues of material fact that the claimed duress had not been removed between the time they signed the agreements and the time they brought this action. Appellants have failed to raise any facts to that effect. While Moore has advanced undisputed facts that appellants accepted the benefits of their respective agreements, Abbadessa and Mariotti have offered no facts (disputed or undisputed) about how long the economic duress lasted; or put another way, if and when their

construction was complete that it intended to repudiate contract); *Lucier v. Manchester*, 80 N.H. 361, 363, 117 A. 286, 287 (1922) (accep-

tance of services of attorney by city amounted to ratification of invalid employment contract).

claimed duress ceased.[3] Having failed to satisfy their burden of production, their argument necessarily fails. *See, e.g., Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991) (where opponent of summary judgment motion "bears the ultimate burden of proof, he must present definite, competent evidence" sufficient to document a factual disagreement over some issue of material fact).

For the foregoing reasons, we will affirm the summary judgment orders of the district court in favor of Moore Business Forms, Inc., and against Frank B. Abbadessa and Robert D. Mariotti.

*Affirmed.*

---

**3.** We should also point out that we have found no authority that New Hampshire has adopted or would adopt the theory that a contract signed under economic duress is capable of being ratified only after the duress is removed. The only case from this circuit addressing the issue is *Ismert and Associates, Inc. v. New England Mutual Life Insurance Co.,* 801 F.2d 536 (1st Cir. 1986). In that case, this circuit considered an action brought by a tax consulting service firm against an insurance company. The firm argued that the agreement it had signed, releasing the insurance company from any claims resulting from the firm's loss of business opportunities, was unenforceable because it was obtained under duress. Judge Maletz authored the majority opinion as well as a dissent. In his dissent on the issue of economic duress, Judge Maletz wrote that "there can be no affirmance [of a contract] unless the duress has ended." *Ismert and Associates,* 801 F.2d at 548. Judge Breyer, writing for the majority on the question of duress, did not address the issue of whether a contract signed under duress is not capable of being ratified until the duress has ended. Instead, Judge Breyer found that plaintiff had not made a sufficient showing that it signed the release agreement under duress. *Id.* In *Ismert,* this circuit was applying Massachusetts law. Thus, the decision is not controlling in this case involving New Hampshire law. Moreover, the statement of Judge Maletz that "there can be no affirmance unless duress has ended", cannot even be used as persuasive authority in this case given that it was not adopted by a majority of the panel.