March 2, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1196

FRANK B. ABBADESSA,

Plaintiff, Appellant,

v.

MOORE BUSINESS FORMS, INC.,

Defendant, Appellee.

No. 92-1197

ROBERT D. MARIOTTI,

Plaintiff, Appellant,

v.

MOORE BUSINESS FORMS, INC.,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Norman H. Stahl, U.S. District Judge]

Before

Selya, Circuit Judge,

Higginbotham,* Senior Circuit Judge,

and Cyr, Circuit Judge.

James H. Shulte with whom Burns, Bryant, Hinchey, Cox & Schulte,

P.A. was on brief for appellants.

Edward M. Kaplan with whom William D. Pa.ndolph and Sulloway

Hollis & Soden were on brief for appellee.

March 2, 1993

*Of the Third Circuit, sitting by designation.

Higginbotham, Senior Circuit Judge. This is an appeal
Higginbotham, Senior Circuit Judge.

from an order of summary judgment in favor of defendant, Moore

Business Forms, Inc., and against plaintiffs, Frank B. Abbadessa

and Robert D. Mariotti. Abbadessa and Mariotti sued Moore for

wrongful termination of employment. Moore moved for summary

judgment, arguing that Abbadessa and Mariotti each agreed in

writing at the time of their termination to release Moore from

any claims arising from plaintiffs' employment or termination of

employment. Plaintiffs opposed the motion for summary judgment,

each alleging that the agreement to release their claims against

Moore had been signed under economic duress.

The United States district court for the District of

New Hampshire, applying New Hampshire law, granted Moore's

summary judgment motion as to both Abbadessa and Mariotti. The

court, in separate orders, found, as a matter of law, that even

if Abbadessa and Mariotti had signed their respective agreements

under duress, each also subsequently ratified the agreements by

failing to repudiate them promptly and by accepting the benefits

that flowed under the agreements.

Because we agree that Abbadessa and Mariotti ratified

their respective resignation agreements, we will affirm the

district court's orders of summary judgment in favor of Moore.

-3-
3

This is a diversity action. Both Abbadessa and Mariotti are

citizens of New Hampshire. Moore is a Delaware corporation with

its principal place of business in Illinois. The district court

had subject matter jurisdiction pursuant to 28 U.S.C. 1332. We

have appellate jurisdiction pursuant to 28 U.S.C. 1291.

I

Frank B. Abbadessa

Frank B. Abbadessa began working as an accountant for

Moore Business Forms, Inc. in December 1973. By 1988, Abbadessa

had advanced to the managerial position of Comptroller of Moore's

Locust Street plant in Dover, New Hampshire. On January 19,

1988, in a meeting between Abbadessa, R.J. Barth, the General

Manager of the Locust Street plant, and Brian Groves, the

Director of Human Resources, Moore requested Abbadessa to resign

and to sign a resignation agreement. Under the resignation

agreement, Moore would provide Abbadessa with the following

benefits from January 19, until April 30 1988: (1) compensation

in the amount of $4,611.75 per month; (2) payment for any

vacation owed Abbadessa for 1988; (3) continued participation in

Moore's Healthcare plan, Dental Plan, and Group Insurance Plan,

with an option to extend participation after April 30, 1988, if

Abbadessa made quarterly payments; and (4) payment by Moore for

-4-
4

outplacement counseling services to assist Abbadessa in finding

other employment. The agreement also provided that Abbadessa and

Moore released each other from any other claims or obligations

arising from Abbadessa' employment with, and termination by,

Moore.

Moore informed Abbadessa that he was being asked to

resign because his performance had not been satisfactory.

Further, Moore made clear to Abbadessa that he could either

resign with the benefits provided under the agreement or not

resign and face the possibility of being fired without any

benefits. Abbadessa did not sign the resignation agreement

during the January 19 meeting. He considered the agreement for

two weeks and, in early February, he returned it signed,

backdated to January 20. During the interval between the January

19 meeting and the time in early February when he signed the

agreement, Abbadessa sought payment of his vacation pay from

Moore. Moore apparently refused to pay any benefits until

Abbadessa signed the resignation agreement. According to

Abbadessa, he finally signed the agreement because his lack of

financial resources left him no other choice.

On May 27, 1988, Abbadessa requested that Moore extend

payment of the benefits provided under the January 18 agreement

which had expired on April 30, 1988. Abbadessa requested the

-5-
5

extension because he had not been able to find other employment

and had run out of money. Moore agreed to extend benefits to

Abbadessa for one more month and amended the January 18 agreement

to reflect that Abbadessa would receive the benefits provided

under the original agreement through May 31, 1988. Abbadessa

signed the amended agreement and dated it June 6, 1988. Toward

the end of June 1988, Abbadessa again requested that Moore grant

him a further extension of his benefits. Moore agreed to

provide Abbadessa with benefits covering half the month of June.

Finally, in July Abbadessa made one more request for extension of

his benefits. This time Moore refused.

Robert D. Mariotti

Robert Mariotti began working as a salesman for Moore

in December 1970. By 1988, Mariotti had advanced to the

managerial position of Operations Manager for Moore's Locust

Street plant. On May 24, 1988, in a meeting between Mariotti,

Barth and Groves, Moore requested Mariotti to resign and to sign

a resignation agreement similar to the one presented to Abbadessa

on January 18, 1988. The agreement provided similar benefits as

those paid to Abbadessa and covered the period of May 24 to

August 31, 1988: (1) compensation in the amount of $5,296.60 per

month; (2) payment for any vacation owed Mariotti for 1988; (3)

-6-
6

continued participation in Moore's Healthcare Plan, Dental Plan,

and Group Insurance Plan, with an option to extend participation

after August 31, 1988, if Mariotti made quarterly payments; and

(4) payment by Moore for outplacement counseling services to

assist Mariotti in finding other employment. The agreement also

provided that Moore and Mariotti released each other from any

other claims or obligations arising from Mariotti's employment

with, or termination by, Moore.

As with Abbadessa, Moore informed Mariotti that he was

being asked to resign because his performance had not been

satisfactory. Mariotti was also presented with the choice of

resigning with benefits or facing the possibility of being

terminated without benefits. After thinking about the agreement

for two days, Mariotti returned it signed on May 26, 1988.

Mariotti claimed that he signed the agreement under financial

pressure and that, being aware of Abbadessa's experience with

Moore, he understood that he would receive no benefits until he

signed the agreement.

Procedural Background

On September 21, 1988, Abbadessa and Mariotti wrote to

counsel for Moore that "they believed they had been terminated

without cause in violation of the established policies and

-7-
7

procedures of Moore and that they had signed the letters of

resignation under duress." On April 11, 1989 Abbadessa and

Mariotti brought separate actions for breach of employment

contract against Moore in New Hampshire's Strafford County

Superior Court. Plaintiffs, in their separate complaints,

alleged that Moore issued written policies, providing that

employees would not be terminated except for cause and then only

after being made aware of deficiencies in their job performance

and given the opportunity to correct those deficiencies.

According to plaintiffs, these written policies constituted an

enforceable employment contract under New Hampshire law, which

Moore breached by terminating plaintiffs without just cause and

without giving plaintiffs the opportunity to correct what Moore

deemed to be deficiencies in their job performance.

On May 5, 1989, both actions were removed to the United

States district court for the District of New Hampshire on

Moore's petition pursuant to 28 U.S.C. 1441. On September 9,

1989, Moore moved for summary judgment as to the claims of both

Abbadessa and Mariotti. Moore argued that the written policy

upon which Abbadessa and Mariotti relied, which stated that

employees would not be terminated except for cause, had been

replaced by a subsequent policy issued during plaintiffs' terms

of employment. The new policy did not provide that employees

-8-
8

would not be terminated except for cause. As such, Moore

maintained, there existed no enforceable employment contract

between plaintiffs and Moore. In any event, Moore continued, the

resignation agreements signed by Abbadessa and Mariotti released

Moore from any and all liability arising from plaintiffs'

employment with, or termination by, Moore.

Abbadessa and Mariotti opposed the motions for summary

judgment. They argued that they never received notice of the

change of policy. They also argued that they never received any

consideration for the new policy, and that New Hampshire law does

not permit an employer to unilaterally modify conditions of

employment to the detriment of an employee in the absence of new

consideration to the employee. As to Moore's claim that they had

released any right to sue, Abbadessa and Mariotti argued that

their respective resignation agreements were invalid because they

had signed the agreements under economic duress.

On October 25, 1989, the district court denied Moore's

motion for summary judgment as to Mariotti. On November 7, 1989,

the court denied Moore's motion for summary judgment as to

Abbadessa. The court employed the same reasoning to deny both

motions. According to the court, Moore's motions for summary

judgment presented three issues: (1) whether Moore's initial

personnel policy represented an enforceable contract; (2) if it

-9-
9

was an enforceable contract, whether it was amended by the

subsequent policy; and (3) whether Abbadessa and Mariotti signed

their respective resignation agreements under duress. In denying

Moore's motions, the court concluded that all three questions

involved genuine issues of material fact which would have to be

decided at trial.1

On August 20, 1991, Moore renewed its motion for

summary judgment as to Abbadessa, and the next day, on August 21

1991, Moore renewed its motion for summary judgment as to

Mariotti. This time, Moore argued that even if Abbadessa and

Mariotti had signed their resignation agreements under duress,

they had subsequently ratified the agreements by failing to

repudiate promptly and by accepting all benefits that flowed

under the agreements. Abbadessa and Mariotti, in a joint

memorandum, raised three grounds to defeat Moore's motions for

summary judgment. First, plaintiffs argued that the doctrine of

the "law of the case" precluded the district court from

considering Moore's renewed motions. Second, plaintiffs argued

that Moore had not pleaded the affirmative defense of

1The case of Robert Mariotti v. Moore Business Forms was

originally assigned to Judge Loughlin, while the case of
Abbadessa v. Moore Business Forms was assigned to Judge

Devine. Subsequent to the denial of Moore's first motions
for summary judgement, both cases were reassigned to Judge
Stahl's calendar.

-10-
10

ratification in its answer or in its original motions for summary

judgment and that, pursuant to Rule 8(c) of the Federal Rules of

Civil Procedure, an affirmative defense which is not pleaded is

waived. Finally, plaintiffs maintained that there were genuine

issues of material fact as to whether they were capable of

ratifying the resignation agreements.

On January 9, 1992, in two separate orders, the court

granted Moore's motion for summary judgment as to Abbadessa and

Mariotti. The court rejected plaintiffs' "law of the case" and

"waiver of unpleaded affirmative defense" arguments, and

concluded that, under New Hampshire law, plaintiffs had indeed

ratified their respective resignation agreements and that Moore

was entitled to summary judgment as a matter of law.

Abbadessa and Mariotti now appeal, raising two of the

grounds that were before the district court. Specifically,

plaintiffs maintain that the "law of the case" doctrine precluded

the district court from ruling on Moore's renewed motion for

summary judgment, and that there were genuine issues of material

fact as to whether plaintiffs were capable of ratifying the

resignation agreements.

II

-11-
11

Our review of the district court's orders for summary

judgment is plenary. United States v. One Parcel of Real

Property with Bldgs, 960 F.2d 200, 204 (1st Cir. 1992). A Rule

56 motion for summary judgment will only be granted if there is

no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. Celotex Corp. v.

Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In a diversity action the substantive law of the forum

state determines which facts are material. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). Here, New Hampshire

substantive law will determine if plaintiffs raised genuine

issues of material fact as to whether they ratified their

respective resignation agreements. But first, we turn to the

question of whether the doctrine of the "law of the case"

precluded the district court from ruling on Moore's renewed

motion for summary judgment.

A.

Under the doctrine of the "law of the case", a decision

on an issue of law made by the court at one stage of a case

becomes a binding precedent to be followed in successive stages

of the same litigation except in unusual circumstances. FCC v.

WOKO, Inc., 329 U.S. 223 (1946); U.S. v. Rivera-Martinez, 931

-12-
12

F.2d 148, 151 (1st Cir. 1991) Piazza v. Aponte Roque, 909 F.2d

35, 38 (1st Cir. 1990). 1B J. Moore, Federal Practice 0.404[1]

(1980).

Here, the district court, in denying Moore's initial

motions for summary judgment, decided that there were genuine

issues of material fact as to whether Abbadessa and Mariotti were

under such economic duress at the time they signed the

resignation agreements as to render the agreements voidable. In

its renewed motions for summary judgment, Moore argued that, even

if Abbadessa and Moore signed the agreements under the sort of

economic duress which would render the agreements voidable,

Abbadessa and Mariotti had nonetheless ratified the agreements by

their subsequent conduct. The issue of whether Abbadessa and

Mariotti ratified the agreements is one which the district court

did not consider, much less decide, in ruling on Moore's initial

motions for summary judgment.

We have stated in this circuit that the doctrine of the

"law of the case" "merely expresses the practice of courts

generally to refuse to open what has been decided." Piazza, 909

F.2d at 38. The issue raised in Moore's renewed motions for

summary judgment was never decided by the district court.

Accordingly, the district court was not precluded from

-13-
13

considering whether Abbadessa and Mariotti ratified their

respective resignation agreements.

B.

In New Hampshire, contracts signed under economic

duress are voidable. King Enterprises v. Manchester Water Works,

122 N.H. 1011, 453 A.2d 1276 (1982); Cheshire Oil Co. v.

Springfield Realty Corp., 118 N.H. 232, 385 A.2d 835 (1978). In

the words of the Supreme Court of New Hampshire: "the payment of

money or the making of a contract might be under such

circumstances of business necessity or compulsion as will render

the same involuntary and entitle the party so coerced to recover

the money paid or excuse him from performing the contract."

Cheshire Oil Co., 385 A.2d at 838.

In order to be "excused" from performing the contract,

a party relying on a theory of business compulsion or economic

duress must demonstrate four elements. First, the party relying

on economic duress must have involuntarily accepted the terms of

another. "It must appear that consent was actually induced by

the pressure applied and would not have been given otherwise."

Id. at 839, quoting Morrill v. Bank, 90 N.H. 358, 365, 9 A.2d

519, 525 (1939). Second, "the coercive circumstances must have

been the result of the acts of the opposite party." Cheshire Oil

-14-
14

Co., 385 A.2d at 839. Third, "the pressure must have been

wrongful." Id. An act or threat of an act may be wrongful

"although the act or threat is not criminal or tortious or in

violation of a contractual duty." Id. Fourth, "circumstances

must have permitted no other alternative but to accept the terms

of another if there is to be a finding of business compulsion."

Id. Thus, if the party relying on the theory of economic duress

"had a legal remedy adequate to redress or compensate for the

injury threatened, the threat will not amount to duress." Id.

Given the above definition of economic duress, there

are, as the district court found, disputed issues of material

fact as to whether Abbadessa and Moore satisfied the four

elements of duress. Specifically, looking at the facts in the

light most favorable to plaintiffs, it is disputed whether the

"coercive circumstances" surrounding the signing of the

resignation agreements were "the result of acts of" Moore.

Abbadessa and Mariotti claim that Moore created "coercive

circumstances" by refusing to negotiate any of the terms of the

agreements and by withholding benefits plaintiffs were entitled

to until they signed the agreement. It is further disputed

whether the choice given by Moore to Abbadessa and Mariotti of

resigning with benefits or not resigning and risking termination

without benefits was "wrongful." Abbadessa and Mariotti claim

-15-
15

that Moore's bargaining position was wrongful because it was done

in bad faith. It is finally disputed whether Abbadessa and

Mariotti were left with "no other alternatives but to accept the

terms" proposed by Moore. Abbadessa and Mariotti claim that they

were not fully aware of any internal appeal procedures available

to them at the time they were presented with the requests for

them to resign. They also claim that they were in no financial

or mental shape to begin court actions.

Therefore, assuming for purposes of summary judgment

that Abbadessa and Mariotti signed the agreements under duress,

the question now becomes whether Moore is nonetheless entitled to

judgment as a matter of law because Abbadessa and Mariotti

ratified the agreements by their subsequent actions.

In New Hampshire, voidable contracts are subject to

ratification. Sawtelle v. Tatone, 105 N.H. 398, 201 A.2d 111, 115

(1964). Since a contract executed under economic duress is

voidable it is also subject to ratification. New Hampshire has

never specifically identified the circumstances under which a

contract executed under economic duress will be considered to

have been ratified. But generally, a voidable contract will be

deemed to have been ratified when the party who is entitled to

avoid the contract "does any act which amounts to a ratification

after full knowledge of all the facts and circumstances." Id.

-16-
16

Acts amounting to ratification are payment or acceptance of the

benefits of the contract and failure to repudiate the contract

promptly. Id. 2 As the Supreme Court of New Hampshire has

stated: "A party cannot treat the contract as binding and as

rescinded at the same time, and after he has elected to stand by

the contract and receive the benefits it confers on him, and has

thus ratified and confirmed it, he cannot thus rescind and

repudiate it." Bechard v. Amey, 82 N.H. 462, 471, 136 A. 370, 375

(1926).

Here, both Abbadessa and Mariotti sought to treat their

resignation agreements as "binding and rescinded at the same

time." Both accepted the benefits the agreements conferred on

them and neither attempted to repudiate the agreements promptly.

2See also Hillside Assoc. of Hollis, Inc. v. Maine Bonding &

Casualty Co., 135 N.H. 325, 605 A.2d 1026 (1992) (voidable

insurance contract between insurance agent and construction
company based on mutual mistake was not ratified when
insurance company promptly notified construction company of
mistake); Derouin v. Granite State Realty, Inc., 123 N.H.

145, 148, 459 A.2d 231, 233 (1983) (voidable land sale
contract based on mutual mistake was ratified because
purchaser had performed significant improvements to property
and property could not be returned to seller in
substantially the same condition in which purchaser received
it); Michael v. Rochester, 119 N.H. 734, 736, 407 A.2d 819,

821 (1979) (city ratified initially invalid construction
contract for building a water main when it failed to notify
the contractor before construction was complete that it
intended to repudiate contract); Lucier v. Manchester, 80

N.H. 361, 363, 117 A. 286, 287 (1922) (acceptance of
services of attorney by city amounted to ratification of
invalid employment contract).

-17-
17

Abbadessa considered the agreement for two weeks before signing

it. After his benefits under the January 19 agreement had

expired, Abbadessa requested that Moore extend him benefits on

three separate occasions. Moore acceded to two of these requests

and refused to extend added benefits on Abbadessa's third and

final request. So, from February 1988 until April 1988,

Abbadessa treated the agreement as binding by accepting the

benefits Moore had promised. Moreover, from April 1988 until

June 1988, Abbadessa further ratified the original agreement by

making three separate requests that Moore extend benefits which

were not owed under the agreement. It was not until after Moore

had refused additional extensions of benefits that Abbadessa

notified Moore's counsel by letter in July 1988 that he had

signed the agreement under duress. Finally, even after Abbadessa

had filed his suit against Moore, at no point did he attempt to

return to Moore the benefits of the agreement which he now claims

he signed under duress.

Similarly, Mariotti considered his agreement for two

days before signing it. From May 1988 until August 1988,

Mariotti continued to receive the benefits under the agreement.

Even after Mariotti supposedly wrote to Moore Counsel in July

1988 that he had signed the agreement under the duress, he

continued to received the benefits under the agreement for August

-18-
18

1988. As with Abbadessa, even after having filed suit against

Moore, at no point did Mariotti attempt to return to Moore the

benefits of the agreement which he now claims he signed under

duress.

The Supreme Court of New Hampshire has written that "a

person seeking to rescind cannot treat the contract as rescinded

and binding at the same time." Sawtelle, 201 A.2d at 115. By

accepting the benefits of their respective resignation agreements

and by failing to notify Moore promptly that they intended to

repudiate the agreements, Abbadessa and Mariotti treated the

agreements as binding. After having done so, they now wish to

treat the agreements as rescinded. That, under New Hampshire

law, they may not do.

Abbadessa and Mariotti argue that they could not have

possibly ratified the agreements until after the duress was

removed. Since, according to Abbadessa and Mariotti, they signed

the agreements under duress because basically, by asking them to

resign, Moore caused them to be in desperate need for money, we

understand plaintiffs' argument to mean that duress would have

been removed when they were no longer in such dire financial

straits. But, as we stated at the outset of our discussion, the

issue in this case is whether appellants raised genuine issues of

material fact as to whether they ratified their respective

-19-
19

agreements. Stated another way: whether they raised genuine

issues of material fact that the claimed duress had not been

removed between the time they signed the agreements and the time

they brought this action. Appellants have failed to raise any

facts to that effect. While Moore has advanced undisputed facts

that appellants accepted the benefits of their respective

agreements, Abbadessa and Mariotti have offered no facts

(disputed or undisputed) about how long the economic duress

lasted; or put another way, if and when their claimed duress

ceased.3 Having failed to satisfy their burden of production,

3We should also point out that we have found no authority
that New Hampshire has adopted or would adopt the theory
that a contract signed under economic duress is capable of
being ratified only after the duress is removed. The only
case from this circuit addressing the issue is Ismert and

Associates, Inc. v. New England Mutual Life Insurance Co.,

801 F.2d 536 (1st Cir. 1986). In that case, this circuit
considered an action brought by a tax consulting service
firm against an insurance company. The firm argued that the
agreement it had signed, releasing the insurance company
from any claims resulting from the firm's loss of business
opportunities, was unenforceable because it was obtained
under duress. Judge Maletz authored the majority opinion as
well as a dissent. In his dissent on the issue of economic
duress, Judge Maletz wrote that "there can be no affirmance
[of a contract] unless the duress has ended." Ismert and

Associates, 801 F.2d at 548. Judge Breyer, writing for the

majority on the question of duress, did not address the
issue of whether a contract signed under duress is not
capable of being ratified until the duress has ended.
Instead, Judge Breyer found that plaintiff had not made a
sufficient showing that it signed the release agreement
under duress. Id.. In Ismert, this circuit was applying

Massachusetts law. Thus, the decision is not controlling in
this case involving New Hampshire law. Moreover, the

-20-
20

their argument necessarily fails. See, e.g., Mesnick v. General

Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (where opponent of

summary judgment motion "bears the ultimate burden of proof, he

must present definite, competent evidence" sufficient to document

a factual disagreement over some issue of material fact).

For the foregoing reasons, we will affirm the summary

judgment orders of the district court in favor of Moore Business

Forms, Inc., and against Frank B. Abbadessa and Robert D.

Mariotti.

Affirmed.

statement of Judge Maletz that "there can be no affirmance
unless duress has ended", cannot even be used as persuasive
authority in this case given that it was not adopted by a
majority of the panel.

-21-
21