### WILLOUGHBY *v.* MOULTON.

A note signed by a mark may be valid against the signer though there be no subscribing witness.

Where a note purporting to be signed by the defendant by mark without a subscribing witness, is specially declared on, if the signature is not denied under the 44th rule of court, it will be considered as admitted to be a genuine signature.

If one party to a contract has been defrauded by the other, he may avoid and rescind the contract, or not, at his election.

But if he elects to rescind, he must do so in reasonable time after the fraud is discovered, and must restore, or offer to restore, whatever he has recovered under the contract.

ASSUMPSIT upon a promissory note declared on. The note dated Dec. 8, 1860, and the declaration may be referred to. The note purported to be signed by the defendant with his mark, and had no witness. There was a notice of denial of signature by the defendant, but no affidavit according to the 44th rule of court. The defendant objected to the admission of the note "because a mark is not a signature under the rule unless there is a witness to it." The court overruled the objection, and the defendant excepted.

The defence set up was that the note was given upon a pretended exchange of horses between the plaintiff and defendant, and that such pretended exchange was invalid because the defendant was made so intoxicated by the plaintiff that he was at the time incapable of contracting, and in fact at the time knew nothing of the transaction.

In support of this defence the defendant testified that on the 8th of December, 1860, he went from his residence in Bridgewater to Holderness, where the plaintiff resided, and there met the plaintiff between one and two o'clock in the afternoon, and they talked of trading horses. He said "the plaintiff asked me how I would trade; I said even, he tried

the horses and then, at plaintiff's request, drank some rum at Felch's, which the plaintiff paid for; then we tried the horse again and then went in at plaintiff's invitation and drank some more for which the plaintiff paid; this was repeated four times to my knowledge; the last I recollect is that the plaintiff offered to trade for $10; this transaction occupied about an hour; that is all I recollect; I got pretty boozy and don't recollect; next morning I found myself at Bridgewater; I have no recollection of ever seeing the note before now; I don't write; I was there in a sleigh; I don't know who shifted the horses from one sleigh to the other; I first knew there was such a note somewhere about a week after the transaction; the horse I had of the plaintiff died about three weeks after the trade; I had drunk no liquor that day until I drank with the plaintiff; I never had any talk with the plaintiff about this note; the day after the transaction I started for Franconia with the horse I had of plaintiff; I went part way and the horse tuckered out, and Plummer came back to Bridgewater with him; I don't know what the plaintiff did with the horse he had of me." Defendant introduced no evidence of any offer by him at any time to return the horse he received of the plaintiff, and he contended that if the transaction between the plaintiff and defendant took place while the latter was incapacitated to contract from intoxication procured by the plaintiff, no offer by the defendant to return was necessary, but the court overruled this position, and ruled that although the foregoing statements of the defendant, in his evidence were true, yet if the defendant does not propose to show that within a reasonable time after he came to a knowledge of the transaction, i. e., the pretended exchange, he made an offer to return the horse received by him from the plaintiff, he cannot here set up the defence that he was at the time of the transaction so intoxicated as to be incapable of contracting.

To these rulings the defendant excepted, and thereupon a verdict was taken for the plaintiff by consent, which the defendant moved to set aside because of the foregoing exceptions.

The questions of law arising upon this motion were reserved for determination by the whole court.

*Wilson*, for plaintiff.

*Clark*, for defendant.

SARGENT, J. The first position taken here is, that "a mark is not a signature under the rule unless there is a witness to it." This position would seem to be favored by Story in his work on Promissory Notes, p. 15, where he says, in speaking of what is necessary to constitute a valid promissory note, that the signature must be in the hand-writing of the party executing it, or if it be by the mark of the maker, that mark must be verified by the hand-writing or attestation of some person who acts for the marksman or attests it at his request. He, however, refers to no case as authority for this position, nor do we find elsewhere the doctrine stated quite so broadly. He, no doubt, states the general practice

in such cases, because almost always there is a subscribing witness to such signatures, and where there is, the signing must be proved by such attesting witness. But if it was intended that a signature could not be made by a mark that should be good without an attesting witness who should sign his name to the instrument as such, we think the weight of authority does not sustain the position.

It is held that an instrument executed by mark, may be proved by a person who has seen the party so execute other instruments. Ch. on Bills 630; Edwards on Bills & Notes 704; 1 Par. on Bills & Notes 23; 2 Par. on Bills & Notes 16. The case cited by all these elementary works as authority for the position, seems fully to sustain it. *George* v. *Surry*, 1 Moody & Malkin 516. This case was assumpsit by the endorsee against the accepter of a bill of exchange drawn by one Ann Moore to her order, and endorsed by her to plaintiff. Ann Moore drew the bill by her mark, and it was endorsed by mark, the writing "Ann Moore her mark" on the endorsement being in the plaintiff's hand. A witness was called to prove the endorsement, who stated that he had frequently seen Ann Moore make her mark and so sign instruments, and he pointed out some peculiarity. *Tindall, C. J.*, after some hesitation, admitted the evidence as sufficient, and the plaintiff had a verdict.

So, in a case in the King's Bench, it was held that a mark was a good signing within the statute of frauds, even when proof was offered that the party could write, the court holding that that would make no difference. *Baker* v. *Deming*, 8 Ad. & El. 94. So in *Brown* v. *The Butchers & Drovers Bank*, 6 Hill 443, Brown had made an endorsement on the bill in pencil, in figures, thus, "1, 2, 8," no name being written and there being no attesting witness, and it also appeared affirmatively that Brown could write. But, upon the evidence, Brown was held liable, the court holding that a person may become bound by any mark or designation he thinks proper to adopt, providing it be used as a substitute for his name, and he intended at the time to be bound thereby.

The note in this case purported to be signed by the defendant by his mark, and under our statute the plaintiff would be a competent witness, and could testify whether or not defendant signed the note in the way it purported to be signed; and if his testimony on that point was affirmative that would be sufficient, if not denied by the defendant, and if denied, it would be a question of veracity between them for the jury.

There can be no doubt, probably, that a note signed in this way would be sufficient if the man making the mark should admit that it was his true signature. His own admission of the signature as genuine must be as good as proof by an attesting witness. Here the effect of the rule is simply that of an admission, that the signature which purports to be his, is his genuine signature. Forty-fourth Rule of Court; *Great Falls Bank* v. *Farmington*, 41 N. H. 33. This exception is overruled.

The evidence here tends to show that some fraud was practiced upon the defendant, either in getting him intoxicated for the purpose of taking advantage of him, or in knowingly taking advantage of him when

in that condition, either of which would be a fraud, and would avoid the contract thus made, or at least would enable the party thus defrauded to avoid it or not at his election, while the other party would have no such choice, as he could not take advantage of his own wrong.

But in all such cases the election on the part of the defrauded party to rescind the contract must be exercised as soon as the fraud is discovered ; and if after the fraud practiced on him has come to his knowledge, he deals with the subject matter of the contract as his own, he cannot afterwards repudiate the contract, although he afterwards discovers farther circumstances connected with the fraud. Ch. on Contracts 680 ; *Campbell* v. *Fleming*, 1 Ad. & Ell. 40. The general rule is, that the party who would recover back on the ground of fraud, what he has parted with under a contract, must, seasonably and before he brings his suit, return or offer to return whatever he has received under the contract. *Cook* v. *Gilman*, 34 N. H. 556, and cases on p. 560 ; *Evans* v. *Gale*, 17 N. H. 573. He cannot treat the contract as binding and as rescinded at the same time, and after he has elected to stand by the contract and receive the benefits it confers on him, and has thus ratified and confirmed it, he cannot thus rescind and repudiate it. *Weeks* v. *Roby*, 42 N. H. 316, and cases on p. 320.

In this case the defendant received a horse in exchange, and in a week he learned that this note was outstanding against him. With a full knowledge of all the facts in the case, and of all the fraud that had been practiced on him, he elected to ratify the contract by keeping the horse he had received. If he would have rescinded it on the ground of fraud he should have returned or offered to return the horse he received, and claimed the one he exchanged for it if he desired it. He should at least have offered to return the one he received, and notified the plaintiff that he intended to rescind, in a reasonable time after the exchange. It was not claimed in this case that the horse which the defendant received was entirely worthless and of no value. Had such a state of facts been proved and relied on, it might have varied the result.

*Judgment on the verdict.*