Hillsborough-northern judicial district
No. 95-557

## KEVORK B. KESHISHIAN, M.D.

v.

## CMC RADIOLOGISTS *& a.*

July 15, 1997

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jack B. Middleton* and *Byrne J. Decker* on the brief, and *Mr. Middleton* orally), for the plaintiff.

*Orr & Reno, P.A.*, of Concord (*Richard B. Couser & a.* on the brief, and *Mr. Couser* orally), for the defendants.

BRODERICK, J. The plaintiff, Dr. Kevork B. Keshishian, appeals several orders issued by the Superior Court (*Groff*, J.). The plaintiff sought equitable relief and damages from several defendants for their asserted role in ousting him from a medical partnership. We affirm.

I

This appeal presents a tangled web of facts and procedural maneuvers, all of which stem from the plaintiff's falling out with his former partners. The plaintiff was a founding partner of CMC Radiologists (the partnership), an association of radiologists that provided services to the Catholic Medical Center (CMC) in Manchester. In late 1987, the partnership began negotiations with CMC for a long-term contract. The plaintiff informed his partners that he planned to retire in 1991 and relocate to Maryland. In May 1988, the partnership executed a five-year radiology agreement with CMC. The agreement expressly provided that the plaintiff would withdraw from the partnership on June 30, 1991.

At some point in 1989, the plaintiff began to have second thoughts about his pending retirement due to a change in his economic circumstances. The partners, while willing to hire the plaintiff as a consultant, insisted that he withdraw from the partnership on June 30, 1991. Following negotiations, the parties entered into a consulting agreement in July 1991, in which the plaintiff sold his partner-

ship interest to his fellow partners and agreed to provide his professional services to the partnership for two years at a fixed salary. The remaining partners formed a new partnership, which was later incorporated as CMC Radiologists, P.C.

In June 1993, as his two-year consulting agreement was set to expire and after his efforts to negotiate a return to partnership status failed, the plaintiff filed a petition for equitable relief and damages in superior court, naming as defendants the partnership, three individual partners (Channing S. Swan, II, M.D., Wane Joselow, M.D., and John E. Foster, M.D.), and the professional corporation. CMC was also named, but it was later dismissed as a defendant and is not a party to this appeal. In his petition, the plaintiff sought rescission of the 1991 consulting agreement, injunctive relief, and related damages. He claimed that the agreement was the product of duress and other improper conduct.

In November 1993, all defendants, except CMC, moved for summary judgment. They asserted that the plaintiff's claims were barred by his ratification of the consulting agreement and laches. In January 1994, the trial court granted the motion.

Shortly thereafter the plaintiff moved to amend his original petition. He claimed that his acquiescence to the 1988 radiology agreement, which indicated that he would retire in 1991, was the product of fraud and negligent misrepresentation. He therefore sought to rescind it and the 1991 consulting agreement which allegedly flowed from it. In May 1994, the trial court allowed this amendment.

The plaintiff filed a second motion to amend in February 1995, alleging breach of fiduciary duty and claiming damages for emotional distress and harm to his reputation. The trial court denied the proposed amendment.

Prior to trial the defendants moved to dismiss the fraud and negligent misrepresentation claims on the grounds that they were time-barred. The trial court deferred ruling on this motion and also deferred ruling on the defendants' motion to compel the plaintiff to elect between his legal and equitable remedies. A jury was then empaneled to hear the plaintiff's claims for money damages, and the court reserved the equitable claim for itself. After a seven-day trial, the jury deadlocked and a mistrial was declared.

The plaintiff then moved for a voluntary nonsuit on his equitable claim for rescission, which the court denied. The court next addressed the defendants' pending motion to dismiss and ruled that the plaintiff's legal claims were barred by the statute of limitations. The court also ruled against the plaintiff on the merits of his

equitable claims, finding no fraud or negligent misrepresentation. This appeal followed.

On appeal, the plaintiff takes issue with four of the trial court's rulings: (1) the dismissal of his original claims on the basis of ratification and laches; (2) the denial of his second motion to amend his petition; (3) the ruling that his legal claims were barred by the statute of limitations; and (4) the denial of his motion for a voluntary nonsuit. We address each argument in turn.

## II

The trial court granted the defendants' motion for summary judgment, ruling that the plaintiff's original claims were barred as a matter of law because the plaintiff had ratified the 1991 consulting agreement and because his claims were barred by laches. As we find no error with respect to the trial court's ratification ruling, we need not examine the alternate determination that the plaintiff's claims were barred by laches.

While a contract that is the product of duress is voidable, *see King Enterprises v. Manchester Water Works*, 122 N.H. 1011, 1013, 453 A.2d 1276, 1277 (1982), it is well settled that a party "cannot treat [a] contract as binding and as rescinded at the same time." *Willoughby v. Moulton*, 47 N.H. 205, 208 (1866). A contract made under duress will be deemed ratified if the aggrieved party fails to repudiate the agreement within a reasonable time after the duress has dissipated. *See Blum v. Blum*, 477 A.2d 289, 294 (Md. Ct. Spec. App. 1984); *McGee v. Stone*, 522 A.2d 211, 214 (R.I. 1987). "Intention to ratify may be signified in many ways, including intentionally accepting benefits under the contract, remaining silent or acquiescing in the contract for a long period of time after an opportunity exists to have it declared void, or acting upon the contract by affirmatively acknowledging it or performing under it." *Kovian v. Fulton County Nat. Bank and Trust Co.*, 857 F. Supp. 1032, 1039 (N.D.N.Y. 1994). Ratification is distinct from estoppel; it operates as an election, making the once voidable contract fully enforceable. *See Sawtelle v. Tatone*, 105 N.H. 398, 403, 201 A.2d 111, 115 (1964).

On appeal from a grant of summary judgment, we will affirm the trial court only if there was no genuine issue of material fact and if the moving party was entitled to judgment as a matter of law. *Dwire v. Sullivan*, 138 N.H. 428, 430, 642 A.2d 1359, 1360 (1994). The trial court found that after "[c]onstruing th[e] facts in the light most favorable to the plaintiff, it is clear that [the plaintiff] failed to

repudiate the contract." The court also found that it was undisputed that the plaintiff fully performed his duties under the consulting agreement, accepted his salary and other benefits in full, and never indicated that he sought to disavow the agreement. The court consequently ruled that the plaintiff had ratified the consulting agreement, "and may not now seek to avoid [its] effect on the basis of duress, fraud or breach of fiduciary duty."

■ The plaintiff argues that he could not have repudiated the agreement, as he "still could not afford to lose his source of income." This argument fails because it would excuse lack of repudiation in every case in which a claim of economic duress was raised: absent a contract that is so imbalanced as to raise issues of unconscionability, cf. *Williams v. Walker-Thomas Furniture Company*, 350 F.2d 445, 449 (D.C. Cir. 1965), the repudiation of an agreement will always compel the victim of the alleged duress to sacrifice some benefit.

■ The plaintiff's own correspondence demonstrates that soon after the consulting agreement was signed he told a third party that he felt he had been taken advantage of, thereby demonstrating that he was aware of the alleged grounds for rescission long before he brought his suit in superior court. *See Sawtelle*, 105 N.H. at 404, 201 A.2d at 115. Under these circumstances, the trial court could properly conclude that the plaintiff's failure to affirmatively repudiate the contract constituted ratification. *Cf. Young v. Data Switch Corp.*, 646 A.2d 852, 856 (Conn. 1994) (intent to ratify "may be inferred from silence as well as from affirmative acts").

The plaintiff also asserts that his intent to ratify the agreement was a question of fact that could not properly be disposed of on summary judgment. In support of this argument, the plaintiff alleges that "[n]umerous documents submitted by Plaintiff in opposition to Summary Judgment clearly support his lack of intent to ratify."

■ We note that the bulk of the documents that the plaintiff refers to were *not* submitted with his objection to the defendants' motion for summary judgment, but instead were submitted with his motion for reconsideration. "[A]lthough Superior Court Rule 59-A entitles a party who has received an adverse ruling on a motion to seek reconsideration, the rule does not purport to authorize either party to submit further evidence bearing on the motion." *Brown v. John Hancock Mut. Life Ins. Co.*, 131 N.H. 485, 492, 558 A.2d 822, 826 (1989). The trial court could have rejected the plaintiff's new exhibits outright, but there is no indication in the record that the

court took this course, and we assume that it considered everything the parties had submitted. *See id.* at 492-93, 558 A.2d at 826.

■ The principal evidence offered in support of the plaintiff's contention that the defendants had notice of his intent to disavow the agreement consisted of several letters to CMC's president. CMC was not, however, a party to the 1991 agreement and did not move for summary judgment. The plaintiff fails to explain how notice to CMC's president would be binding on the partners and the partnership. Further, evidence that merely demonstrates that the defendants knew of the plaintiff's general disappointment with the consulting agreement is insufficient to show that they were aware of the plaintiff's assertion that he had been compelled to sign the agreement. *Cf. Bina v. Providence College*, 844 F. Supp. 77, 87-88 (D.R.I.) ("grumbling acceptance" does not prevent formation of binding contract), *aff'd*, 39 F.3d 21 (1st Cir. 1994), *cert. denied*, 115 S. Ct. 1406 (1995). Our review of the summary judgment record reveals no evidence which establishes that the defendants knew of the plaintiff's duress claims at any time before March 1993: four months before the consulting agreement was to expire. Given the plaintiff's acquiescence to the terms of the consulting agreement for such a long period of time, relative to the term of the agreement, the trial court could properly find as a matter of law that the plaintiff ratified the agreement. *See Niosi v. Niosi*, 641 N.Y.S.2d 93, 94 (App. Div.), *appeal denied*, 675 N.E.2d 1231 (N.Y. 1996).

■ The plaintiff also alleges that even if he ratified the consulting agreement his claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing should have survived the motion for summary judgment because they did not hinge on the validity of the agreement. Because the plaintiff only referenced this argument in a footnote in his brief and failed to cite any legal authority to support it, we consider the argument waived. *See D. W. Clark Road Equip., Inc. v. Murray Walter, Inc.*, 124 N.H. 281, 285, 469 A.2d 1326, 1329 (1983).

### III

■■ The plaintiff next asserts that the trial court erred when it refused to grant his second motion to amend his petition. A trial court has broad discretion to allow such amendments. *See* RSA 514:9 (1974). Generally, a court should allow amendments to pleadings to correct technical defects but need only allow substantive amendments when necessary to prevent injustice. *See Nat'l Marine*

*Underwriters v. McCormack*, 138 N.H. 6, 8, 634 A.2d 1008, 1010 (1993). A substantive amendment which introduces an entirely new cause of action, or calls for substantially different evidence, may properly be denied. *See Clinical Lab Prod's, Inc. v. Martina*, 121 N.H. 989, 991, 437 A.2d 285, 286 (1981). The decision to deny or grant a motion to amend, moreover, rests in the sound discretion of the trial court, and we will not overturn it absent an abuse of that discretion. *See Belcher v. Paine*, 136 N.H. 137, 148, 612 A.2d 1318, 1326 (1992).

The trial court found that the plaintiff's proposed amendment, which was offered six weeks before trial, would add a new cause of action for breach of fiduciary duty. The court also found that the proposed amendment would greatly expand the fraud and misrepresentation claims, and subject the defendants to additional damages for emotional distress and harm to reputation. The court concluded that the amendment would "open[] up completely new areas of evidence which would not be required or allowed under the prior amendment" and that the defendants would be "severely prejudiced in their ability to prepare to defend these new allegations and actions by the trial date" and accordingly refused to grant the amendment.

 The plaintiff argues that the breach of fiduciary duty claim was not new, but instead represented an attempt to set forth, as a separate cause of action, facts that had previously been alleged within the intentional misrepresentation charge. Apparently reasoning otherwise, the trial court treated the claim as a new and distinct cause of action. Given the considerable dissimilarity between standard misrepresentation claims and breach of fiduciary duty claims, *cf. Simpson v. Ernst & Young*, 850 F. Supp. 648, 656 (S.D. Ohio 1994) (fiduciaries cannot merely point to the "morals of the marketplace" to defend against fraud claims), *aff'd*, 100 F.3d 436 (6th Cir. 1996), *cert. denied*, 65 U.S.L.W. 3782 (U.S. May 27, 1997), we cannot say that the trial court's ruling constitutes an abuse of discretion.

## IV

The plaintiff next takes issue with the trial court's determination that his legal claims, as set forth in his amended petition, were barred by the three-year statute of limitations. *See* RSA 508:4, I (Supp. 1996). Specifically, the plaintiff argues that the "discovery rule" tolled the statute of limitations, and that the statute did not begin to run until at least 1991. Under the discovery rule exception

to the statute of limitations, "when the injury [complained of] and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission," the limitations period will only begin to run when "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." RSA 508:4, I; *see also McCollum v. D'Arcy*, 138 N.H. 285, 286-87, 638 A.2d 797, 798-99 (1994). The trial court found that the 1988 radiology agreement plainly required the plaintiff's retirement in 1991, and, therefore, the present dispute was "not a case for the application of the discovery rule." The court, accordingly, ruled that the cause of action accrued in 1988, and that the plaintiff's filing in 1993 was time-barred.

On appeal the plaintiff argues that the trial court's interpretation of the radiology agreement was in error. He also asserts that, because the radiology agreement allegedly could not have been enforced by the other partnership defendants, his cause of action did not accrue until the 1991 consulting agreement was signed, as he had suffered no actionable harm until that date. He further argues that the application of the discovery rule should have been determined by the jury. Finally, he contends that the trial court should have denied the motion to dismiss as untimely filed. We find these arguments to be without merit.

A

When interpreting a written agreement, we give the language used by the parties its reasonable meaning, *see Chadwick v. CSI, Ltd.*, 137 N.H. 515, 525, 629 A.2d 820, 827 (1993), considering the circumstances and context in which the agreement was negotiated, *see Spectrum Enterprises, Inc. v. Helm Corp.*, 114 N.H. 773, 776, 329 A.2d 144, 146-47 (1974), and reading the document as a whole. *See Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 569, 669 A.2d 227, 230 (1995). While a trial court may properly consider extrinsic evidence of fraud, *Walsh v. Young*, 139 N.H. 693, 695, 660 A.2d 1139, 1141 (1995), the plaintiff rests his argument solely upon the "clear language of the Radiology Agreement." In such a case, we review the trial court's interpretation of the contract *de novo*. *See Estate of Frederick v. Frederick*, 141 N.H. 530, 531-32, 687 A.2d 711, 713 (1996); *cf. Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust*, 137 N.H. 393, 396, 628 A.2d 260, 262 (1993) (suggesting that a different standard of review would be used if trial court properly admitted extrinsic evidence).

▮▮▮ The radiology agreement states that the plaintiff "will be withdrawing from the [p]artnership" in 1991. The plaintiff contends that this language merely indicates that his retirement was contemplated. On the contrary, the language establishes that the plaintiff would affirmatively leave the partnership in 1991. Other clauses of the radiology agreement demonstrate that when the parties intended to indicate that an action was uncertain, or tentatively planned, they so indicated through the use of phrases such as "it is anticipated that . . . ." The disputed clause contains no such limiting language and, therefore, plainly indicates that the parties expressly intended to require the plaintiff's retirement in 1991.

B

We find the plaintiff's contention that the radiology agreement was not binding upon him until bolstered by the consulting agreement equally unpersuasive. While the plaintiff was undoubtedly bound by the contracts that the partnership entered into, see RSA 304-A:9, I (1995), he argues that the agreement with CMC had no binding effect between the members of the partnership. Because the partnership defendants allegedly could not have required his retirement under the radiology agreement, the plaintiff contends that he suffered no damage until the partnership affirmatively required his retirement under the 1991 consulting agreement. Accordingly, he asserts that his cause of action for fraud did not accrue until 1991, and his action was not barred by the statute of limitations.

▮▮▮▮ The plaintiff's argument ignores his duty, as a partner, to avoid acts that damage his co-partners' partnership interests. See Jacoby v. Feldman, 146 Cal. Rptr. 334, 340 (Ct. App. 1978). If the plaintiff had failed to comply with the terms of the radiology agreement, he would have placed the partnership in breach, thus violating the aforementioned duty and enabling the defendants to bring suit to enforce the duty. See Pace v. Peck, 440 N.Y.S.2d 710, 715-17 (App. Div. 1981) (noting that an equitable action to enforce such a duty may be brought without dissolving partnership). Moreover, the plaintiff's cause of action is grounded upon the claim that CMC was the instrumentality of the partnership's scheme to fraudulently deprive him of his partnership interest. Having undertaken this line of argument, the plaintiff will not now be heard to argue that the 1988 agreement with CMC is of no consequence. Cf. Coakley v. Maine Bonding & Cas. Co., 136 N.H. 402, 419, 618 A.2d 777, 787 (1992). Upon execution of the 1988 agreement, the alleged fraud was complete: through their allegedly fraudulent conduct, the

defendants had stripped the plaintiff of his right to continue to enjoy the benefits of the partnership. The plaintiff, accordingly, suffered actual harm in 1988.

## C

The plaintiff also argues that the application of the discovery rule is a question of fact for the jury, and, further, that the trial court's failure to submit the issue to the jury violated his constitutional right to a jury trial by foreclosing retrial of his legal claims in front of a new jury. The trial court, as noted earlier, considered the defendants' pending motion to dismiss after the mistrial was declared, and ruled that the plaintiff's legal claims were barred by the statute of limitations. It found that the plaintiff's claims did not implicate the discovery rule because "[t]he plaintiff was aware of the alleged acts or omissions at the time of their occurrence and of the damage they would probably cause."

In support of his contention that facts surrounding the application of the discovery rule must be found by a jury, the plaintiff relies on several cases from other jurisdictions . *E.g.*, *Kawai Farms, Inc. v. Longstreet*, 826 P.2d 1322, 1326 (Idaho 1992); *Graham v. Keuchel*, 847 P.2d 342, 366 (Okla. 1993). The plaintiff also cites to our decision in *Black Bear Lodge v. Trillium Corp.*, 136 N.H. 635, 620 A.2d 428 (1993), in which we stated that, under the discovery rule, the issue of "[w]hether the plaintiff did in fact exercise reasonable diligence is a question of fact." *Id.* at 638, 620 A.2d at 430.

The plaintiff's argument misses the mark. The application of the discovery rule may require factual determinations, but when an issue arises that is equitable in nature, the trial judge acts as the trier of fact. *See Dion v. Cheshire Mills*, 92 N.H. 414, 416-18, 32 A.2d 605, 606-07 (1943); *cf. McElroy v. Gaffney*, 129 N.H. 382, 386, 529 A.2d 889, 891 (1987) (no right to jury trial in equity action). In this jurisdiction the discovery rule has traditionally been deemed equitable, *see Rowe v. John Deere*, 130 N.H. 18, 22-23, 533 A.2d 375, 377 (1987); *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 170, 371 A.2d 170, 174 (1977), and the plaintiff does not argue that the codification of the rule changes this result. *Cf. Dowd v. Gagnon*, 104 N.H. 360, 362, 187 A.2d 63, 65 (1962) (courts' equitable power to quiet title "amplified" by statutes). In short, the plaintiff is not entitled to have a jury decide the issue merely because the application of the discovery rule may involve a "question of fact."

Similarly, a litigant has no constitutional right to a jury trial when his or her claim is time-barred. *See Matter of Certif. of*

*Questions of Law*, 544 N.W.2d 183, 202 (S.D. 1996). The trial court is therefore vested with the power to decide a statute of limitations question "at a preliminary hearing in advance of trial." *Shillady v. Elliot Community Hosp.*, 114 N.H. 321, 325, 320 A.2d 637, 639 (1974); *cf. Fothergill v. Seabreeze Condos.*, 141 N.H. 115, 116, 677 A.2d 696, 697 (1996) (noting that the statute of limitations "frequently appears in motions to dismiss"). Mere invocation of the discovery rule does not give a litigant a constitutional right to litigate a claim in front of a jury if that claim is otherwise barred by the statute of limitations. *Cf. Lakeman v. LaFrance*, 102 N.H. 300, 304, 156 A.2d 123, 126-27 (1959) (no constitutional right to jury trial on claim that statute of limitations was tolled by fraudulent concealment because claim is equitable in nature).

In light of the preceding discussion, it is apparent that the plaintiff's arguments must fail. As an equitable issue, the application of the discovery rule was properly considered by the trial court. The plaintiff's argument that the trial court's failure to submit the statute of limitations question to the jury violated his constitutional right to a jury trial by foreclosing later consideration of the very claims the court ruled time-barred is without merit. If the trial court had held a hearing prior to trial and dismissed the claims, the plaintiff would not be entitled to a jury trial on his claims. In this case, the trial court's decision to delay ruling on the discovery rule issue until after trial, when the facts regarding the plaintiff's discovery of the alleged fraud had been fully developed, does not change this result. While in some instances a court's decision to delay ruling on statute of limitations issues might create constitutional problems that would not arise if a hearing were held prior to trial, *cf. Therma-Tru Corp. v. Peachtree Doors Inc.*, 44 F.3d 988, 994-95 (Fed. Cir. 1995) (trial court bound by jury's determination of factual issues common to both the legal and equitable claims), no such problems arose in the present case, as the jury was unable to reach a verdict. Although it might have been more economical to rule on the motion to dismiss at an earlier point in time, thereby eliminating the need for a lengthy trial, *cf. Smith v. Grumman-Olsen Corp.*, 913 F. Supp. 1077, 1087 (E.D. Tenn. 1995) (stating that allowing statute of limitations issues to be decided during main trial "would be an inefficient use of the Court's time"), in this case the trial court appropriately examined the statute of limitations issues.

### D

The plaintiff also argues that the trial court committed "clear error" when it allowed the defendants' motion because the

motion was allegedly filed after the time prescribed in Superior Court Rule 28. Even if we assume that the motion was filed late, which the defendants dispute, the trial court is vested with the discretion to waive the time limit, and we will not overturn the court's ruling if there were grounds to find good cause to waive it. *See Fothergill*, 141 N.H. at 117-18, 677 A.2d at 697-98; *see also* SUPER. CT. R. 28. The plaintiff offers no support for his argument that the court's ruling constituted "clear error" and has made no allegation that the court could not have found good cause to waive the rule. The plaintiff has failed to show that the court's decision constituted an abuse of discretion. *See White v. Francoeur*, 138 N.H. 307, 310, 638 A.2d 1250, 1252 (1994).

V

The plaintiff next argues that the trial court erred in refusing to grant his motion for a voluntary nonsuit on his equitable claims. While the defendants argue on appeal that "[a]lthough the statute of limitations ruling was issued only in the context of the legal claims . . . the ruling is equally applicable to the equitable claims," we need not address this in great detail because we affirm the trial court's decision to deny the plaintiff's motion.

The decision to grant a nonsuit after the trial has commenced rests with the sound discretion of the court. *See Fulford v. Converse*, 54 N.H. 543, 544 (1871). We will not overturn the trial court's ruling unless it is clear that the court abused its discretion. *Cf. Total Service, Inc. v. Promotional Printers, Inc.*, 129 N.H. 266, 267-68, 525 A.2d 273, 274-75 (1987) (pretrial motion for voluntary nonsuit).

The plaintiff concedes that he sought the nonsuit to avoid the preclusive effects that the trial court's disposition of his equitable claims would have on a retrial of his claim for money damages. The trial court found that this dilemma resulted from a tactical decision that the plaintiff had made to pursue both legal and equitable remedies that were based upon the same set of facts. The court found that it would be manifestly unjust to the defendants to grant the nonsuit, apparently reasoning that to do so would force them to bear the burden of the plaintiff's failed strategic gamble. We cannot say that these findings evidence an abuse of discretion.

The plaintiff contends that the trial court's ruling denied him his constitutional right to a jury trial on his legal claims. *See McElroy*, 129 N.H. at 386, 529 A.2d at 891; *see also* N.H. CONST. pt. I, art. 20.

The plaintiff, however, had no viable legal claims because they were barred by the statute of limitations. Therefore, he was not entitled to a jury trial. *See Uselman v. Uselman*, 464 N.W.2d 130, 137 (Minn. 1990). While our analysis might have differed if we had determined that the trial court erred with respect to the statute of limitations ruling, *see Dairy Queen v. Wood*, 369 U.S. 469, 479 (1962), in this case the plaintiff was not denied his right to a jury trial as he had no such right.

*Affirmed.*

All concurred.