Snow Making v. Niedner                    CV-97-079-M    03/03/98

UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW HAMPSHIRE


Snow Making Services, Inc.,
      Plaintiff

      v.                                        Civil No. 97-79-M

Niedner Limited,
      Defendant

                              **O R D E R**


      Niedner Limited has filed a motion for partial summary
judgment on claims based on agreements entered into and actions
taken prior to the parties' execution of a settlement and
distributorship agreement dated August 14, 1996.  Snow Making
objects, alleging that the settlement agreement is not
enforceable because it was obtained through fraud and economic
duress and, alternatively, because Niedner breached the
agreement.  For the reasons that follow, summary judgment is
granted in part.


                        **Standard of Review**

      Summary judgment is appropriate if the "pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The moving party first must show the absence of a genuine
issue of material fact for trial.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 256 (1986).  If that burden is met, the

opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); accord Denovellis v. Shalala, 124 F.3d 298, 305-06 (1st Cir.1997) ("Once the moving party has properly supported her motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact could reasonably find in his favor."). The court interprets the record in the light most favorable to the nonmoving party and resolves all inferences in its favor. Saenger Organization v. Nationwide Ins. Assoc., 119 F.3d 55, 57 (1st Cir. 1997). Thus, summary judgment will be granted if the record shows no trialworthy factual issue and if the moving party is entitled to judgment as a matter of law. EEOC v. Green, 76 F.3d 19, 23 (1st Cir. 1996).

## Background[1]

The present dispute arises from the failed business relationship between Niedner and Snow Making. In February 1995 the parties agreed that Snow Making would act as a distributor of Niedner's snow making equipment. Snow Making alleges that Niedner almost immediately breached the agreement. In March

---

[1] Because Snow Making did not include a "short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require trial," the court presents the facts for background purposes only. LR 7.2(b)(2).

2

1996, Snow Making and Niedner entered a new agreement for the 1996-1997 season, which apparently did little to enhance relations between them.  On April 1, Niedner sent an amendment to the agreement that changed Snow Making's status from exclusive to nonexclusive distributor.

In June 1996, Snow Making commenced suit in state court by serving Niedner with a Writ of Summons alleging that Niedner breached both the 1995 and 1996 agreements.  The parties met on July 5, 1996, to discuss settlement, apparently before the served writ was actually filed with the Superior Court.  As a result of their July 5th discussion, the parties signed a settlement agreement that described the business relationship they would maintain until March 31, 1997, subject to two conditions:  a new distributorship agreement would be entered into, and Snow Making's claims based on the March 1996 agreement and any other agreements for the 1996-1997 season would be dropped.

The parties signed a new distributorship agreement on August 14, 1996.  But the new agreement apparently spawned a new series of disputes, that led eventually to termination of the distributorship in January 1997.  Snow Making filed this suit, alleging breach of the parties' agreements, and Niedner asserts counterclaims for breach of contract and fraud.

## Discussion

Niedner moves for partial summary judgment on grounds that Snow Making cannot assert claims for breach of the parties'

3

earlier agreements given the settlement agreement and superseding distributorship agreement. In response, Snow Making contends that it ought to be allowed to rescind the settlement agreement because Niedner breached the agreement and because Snow Making was induced to settle based on economic duress created by Niedner's business practices and by fraud. Before reaching the merits of the summary judgment motion, some discussion of preliminary matters is required.

First, the court points out that its analysis of the current motion was substantially hampered by plaintiff's failure, in large part, to make specific references to the record to support its objection to summary judgment. Nevertheless, the court will attempt to construe the record as required by Rule 56(c), rather than require plaintiff to supplement its pleading.

Second, the court notes that neither party has addressed a possible choice-of-law issue suggested by the distributorship agreement. The August 1996 agreement provides at section 21.1: "This Agreement shall be governed and construed in accordance with the laws of the Province of Quebec. The United Nations convention on international sales of goods shall apply to this Agreement." Neither party has provided notice of its intent to raise an issue involving application of the law of a foreign country. See Fed. R. Civ. P. 44.1. Therefore, the court will apply the decisional law of New Hampshire. See Putnam Resources v. Pateman, 958 F.2d 448, 466 n.19 (1st Cir. 1992).

4

Third, although the parties seem to agree that their settlement agreement, if valid and enforceable, would preclude claims based on the parties' business disputes antedating the agreement, the actual terms of the agreement seem to settle claims arising from the March 13, 1996, letter agreement and agreements or representations made after that date, but not claims based on their dealings from February 1995 until March 1996. The July 5 agreement states on page 3:

> The parties agree that this agreement in principle is subject to the entering into of (i) a formal distributorship agreement for the period from April 1, 1996 to March 31 (ii) the execution of a discharge by SMS of any claim arising from the March 13, 1996 letter of agreement or any other verbal or written communication made prior to the date hereof relating to the period from March 1, 1996 to February 28, 1997.

Snow Making's state court writ included allegations based on the parties' dealings between February 1995 and March 1996 as well as after March 1996. Although the unfiled stipulation for docket markings says "no further action for the same cause," which would seem to include claims based on the parties' agreements prior to March 13, 1996, it remains unclear what effect that undocketed stipulation may have on the present suit. At least one plausible interpretation of the settlement might be that it applied to claims based on the agreements after March 13, 1996, but did not apply to claims based on the parties' dealings prior to that date.

Putting aside these ambiguities for the moment, the court will consider the issues raised in Niedner's pending motion for summary judgment and Snow Making's objection.

5

## A.   Election of Remedies

Niedner suggests that Snow Making is impermissibly attempting "to have its cake and eat it too" by bringing claims based on the parties' settled disputes that would require rescission of their settlement agreement, while at the same time bringing claims for breach of the settlement agreement that would require enforcement of the agreement.  Niedner has not developed its argument any further, and therefore the court declines to consider the doctrine of election of remedies as a separate basis for partial summary judgment.  See, e.g., In re Estate of Ward, 129 N.H. 4, 10 (1986) (discussing limited doctrine of election of remedies under Ricker v. Mathews, 94 N.H. 313, 317 (1947)).

## B.   Breach as Grounds for Recission

A party's breach of contract may allow the remedy of rescission "only where the contractual breach is of vital importance . . . and should be granted only 'when in all the circumstances it appears right and just to the parties to do so.'"  Patch v. Arsenault, 139 N.H. 313, 318 (1995) (quoting Barber v. Somers, 102 N.H. 38, 42 (1959)).  Here, Snow Making claims in conclusory fashion, apparently based on statements in Alan Dubeau's affidavit, that Niedner breached the August 1996 distributorship agreement.

Snow Making claims that Niedner breached by failing and refusing to provide pricing information in a timely manner and by failing to provide reasonable assistance for sales since Niedner

6

did not send a representative to attend trade shows or to meet with prospective customers. However, the agreement itself provides pricing information in schedule B, and Snow Making has not shown that the information provided failed to meet Niedner's contractual obligations. While the agreement requires "reasonable assistance" in sales and training, it does not seem to require attendance by Niedner representatives at trade shows or on sales calls, and Snow Making has not shown that its reading of such obligations into the contract language is at least reasonable.

Thus, Snow Making has not sustained its burden to demonstrate the existence of a triable issue as to whether a breach occurred at all, and therefore, the court need not consider whether a breach was of "vital importance" or whether rescission would be appropriate here. The court notes, however, that even if Snow Making were able to show a vitally important breach, Snow Making's failure to return its benefits under the contract, and its own apparent breaches of the same agreement would likely persuade the court that the equitable remedy of rescission would not be appropriate under these circumstances.

## C. **Economic Duress as Grounds for Recission**

To invalidate the settlement based on business compulsion or economic duress, Snow Making must show "that [it] involuntarily accepted the other party's terms, that the coercive circumstances were the result of the other party's acts, that the pressure

7

exerted by the other party was wrongful, and that under the circumstances the plaintiff had no alternative but to accept the other party's terms."  King Enterprises v. Manchester Water Works, 122 N.H. 1011,1014 (1982).  Snow Making argues that Niedner's refusal to honor its exclusive distributorship commitment in the March 1996 agreement created circumstances of economic duress that forced Snow Making to capitulate to Niedner's settlement terms.

Snow Making provides no factual support, however, for its claimed economic hardship, other than statements in Dubeau's affidavit.  Dubeau says that Snow Making was unable to do business after April 1996 because Niedner refused to provide pricing information unless Snow Making agreed to become a nonexclusive distributor.  The March agreement, however, includes pricing information that Niedner represented it would try to hold until October 1996.  Snow Making has not shown why that pricing information was inadequate to support continued operation under the March agreement.

Further, the record includes no evidence of Snow Making's economic condition during the relevant period and, therefore, does not demonstrate the degree of economic impact of any interruption in sales activity, if that occurred.  Snow Making's conclusory statements that it "faced bankruptcy" are not sufficiently supported by the record to create a triable issue about its financial condition.  In addition, Niedner points to the express terms of the settlement, in which Snow Making agreed

8

to immediately pay its outstanding debt to Niedner, to show that Snow Making did not seem to be suffering financial hardship.

Based on the record presented here, Snow Making has not demonstrated that it suffered wrongful economic duress at the hands of Niedner at the time it settled its claims against Niedner.


D.   **Fraud as Grounds for Recission**

Snow Making contends that it settled its claims against Niedner based on fraudulent representations made during the July 5th settlement meeting. To prove fraud, Snow Making must show "'that [Niedner] intentionally made material false statements which [it] knew to be false or which [it] had no knowledge or belief were true, for the purpose of causing, and which [did] cause, [Snow Making] reasonably to rely to [its] detriment.'" Snow v. American Morgan Horse Ass'n, Inc., 141 N.H. 467, 468 (1997) (quoting Caledonia, Inc. v. Trainor, 123 N.H. 116, 124 (1983)).

Snow Making alleges misrepresentation based on Niedner's promise to pay Snow Making ten percent of all hose product sold in the eastern area by other sellers and to allocate eighty percent of Fall Line's sales to that category. Niedner's sales manager provided information about Fall Line's alleged sales in the preceding years, which Snow Making's president relied on, in part, to project likely income for the 1996 sales year. In fact, Fall Line had sold no snow hose at all as of the time of the July

9

meeting. Snow Making also alleges that Niedner's representation that it had granted Fall Line a distributorship was false.

Taking the facts in Snow Making's favor, the circumstances alleged might well support an inference that Niedner knowingly and falsely represented to Snow Making that Fall Line was making sales, and would be making future sales that would benefit Snow Making. However, it must be remembered, that Snow Making and Fall Line were competitors. To the extent Fall Line sold hose product, it presumably took some sales from Snow Making. Therefore, although Snow Making might have expected a certain benefit from Fall Line's sales between March and July 1996, after July, Snow Making would do better economically if it, rather than Fall Line made the sales. It is unclear on this record what benefit Snow Making would reasonably have expected from Fall Line's sales in the first half of 1996. Therefore, Snow Making has not shown that Niedner's representations about Fall Line were reasonably material to its decision to enter the settlement agreement, or that a reasonable person in Snow Making's position would have relied on the information to make its decision.

Snow Making also argues that it was fraudulently induced to enter the settlement by Niedner's representation that it would allow Snow Making to sell Niedner Econo Flow hose. Niedner then, according to Snow Making (but without factual support in the record), refused to provide necessary pricing information. Even if Snow Making could support its conclusory allegations by

10

pointing to facts in the record, its allegations would amount to breach of the agreement, not fraudulent misrepresentation.

The other representations that Snow Making relies on as evidence of fraud are merely allegations of Niedner's breach of the March 1996 agreement.  Since Snow Making knew at the time of the settlement that Niedner had not performed as it expected, and since breach of the March 1996 agreement was the subject of Snow Making's law suit, those representations cannot be construed to have any bearing on Snow Making's decision to enter the settlement agreement.


**E.    Ratification**

Alternatively, Niedner argues that even if Snow Making could show that the settlement was induced by improper means, Snow Making ratified the agreement by accepting its benefits, which it still has not repudiated.  Unless a party repudiates the benefits of a contract entered under duress within a reasonable time, the contract will be deemed ratified.  See Keshisian v. CMC Radiologists, 698 A.2d 1228,1232 (N.H. 1997).  Continuing economic hardship is not sufficient to justify retaining contract benefits.  Id.   Therefore, Snow Making's operating under the August 1996 distributorship agreement until Niedner terminated it in January 1997, and its failure to return unearned benefits accepted under the agreement, likely amounted to ratification of the agreement sufficient to preclude rescission.  See id. at

11

1233; see also Shafmaster v. Shafmaster, 138 N.H. 460, 467 (1994).

## Conclusion

Snow Making has not shown that a triable issue exists with respect to whether the settlement agreement should be rescinded at least with regard to its claims based on the parties' March 1996 agreement. Accordingly, Niedner is entitled to summary judgment in its favor on Counts II, IV, and V of the complaint. As discussed, above, however, Niedner has not made a sufficient showing that it is entitled to judgment as a matter of law with respect to Count I, which is based on the parties' February 1995 agreement. Accordingly, Niedner's motion for partial summary judgment (document no. 27) is granted as to Counts II, IV, and V only, and is otherwise denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 3, 1998

cc:  C. Nicholas Burke, Esq.
     Warren C. Nighswander, Esq.

12