Strafford
No. 2003-286

TERRY BENNETT

v.

ITT HARTFORD GROUP, INC. *& a.*

Argued: January 14, 2004
Opinion Issued: April 19, 2004

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Charles G. Douglas, III* and *Benjamin T. King* on the brief, and *Mr. Douglas* orally), for the plaintiff.

*Morrison, Mahoney & Miller, LLP*, of Boston, Massachusetts (*Michael F. Aylward* on the brief and orally), for the defendants.

DALIANIS, J. The plaintiff, Terry Bennett, appeals the Trial Court (*T. Nadeau*, J.) order granting summary judgment to the defendants, Twin City Fire Insurance Company, Hartford Fire Insurance Company, and ITT Hartford Group, Inc. (Hartford), on his breach of good faith and fair dealing claim. Bennett also appeals the trial court order denying his motions for voluntary nonsuit without prejudice and to amend his writ. Hartford cross-appeals the trial court order denying its motion to compel discovery of specific documents retained by Bennett. We affirm in part, reverse in part and remand.

A fire destroyed Bennett's home on August 2, 1993. The home was insured under a policy issued by Hartford. Hartford paid its policy limit of one million dollars for damage to the home and $700,000 for loss of personal property, as well as $200,000 for additional living expenses. The record does not disclose the date when the money was paid to Bennett. Additionally, Bennett sustained extensive uninsured losses, because a large collection of antique automobiles and motorcycles was lost in the fire.

Between August 3 and August 7, 1993, a limited investigation by Hartford was conducted at the scene of the fire, focusing upon Bennett's General Electric clothes dryer. Hartford's investigator, Phoenix Investigators, Inc. (Phoenix), made a "casual" inspection of the dryer and concluded that it probably caused the fire. Phoenix did not conduct any further investigation, and did not make any effort to contact General

Electric concerning the cause of the fire. The dryer, however, was retained by investigators and remained in a storage facility from 1993 until 1997.

Eventually, Bennett's experts determined that the General Electric dryer was the source of the fire. Bennett brought a suit against General Electric, which was settled.

Bennett brought actions against Hartford, other insurers and various investigators for contract and tort claims alleging misrepresentation, spoliation of evidence, negligence and breach of the covenant of good faith and fair dealing. All of these suits concerned events that took place after the fire. The insurance policy issued by Hartford for Bennett's home is the subject of this appeal.

Bennett first argues that the trial court erroneously granted Hartford's motion for summary judgment. In reviewing the grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *In re Estate of Raduazo*, 148 N.H. 687, 688 (2002). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

Bennett asserts the following. Hartford engaged in "deceptive conduct during its so-called investigation of the fire" when it told him for three years that it was conducting an active investigation of the cause of the fire and pursuing subrogation against General Electric, and "forbade [Bennett] from conducting any investigation of his own, threatening him that Hartford would be entitled to cancel his coverage if he did so," when, in fact, Hartford had abandoned its investigation ten days after the fire in 1993. Hartford repeatedly told Bennett that it would "diligently pursue an investigation that would not only enable Hartford to pursue its subrogation rights, but would also help ... Bennett to recover his uninsured losses." As a result, Bennett was forced to wait almost three years before ·conducting his own investigation and instituting an independent action against General Electric. Bennett's reliance upon Hartford's assurances deprived him of the opportunity to gather evidence and to effectively pursue his claims against General Electric.

Based upon these allegations, Bennett contends that Hartford breached a duty of good faith and fair dealing that it owed to him independent of the insurance contract. Both parties concede that Hartford did not have an obligation under the insurance contract to investigate the cause of the fire for purposes of subrogation. They also agree that if Hartford decided to seek subrogation, Bennett was contractually obligated to assist Hartford

in its efforts. Bennett asserts that Hartford chose to seek subrogation and took on the duty to investigate the dryer on his behalf, independent of the contract, when it repeatedly told him it intended to do so and refused to let him investigate for himself.

In December 2002, the trial court ruled that Hartford was entitled to summary judgment on the breach of good faith and fair dealing claim because Hartford "completely fulfilled its obligations under the terms of the contract" by virtue of having paid Bennett the full policy limits.

We note, however, that under certain circumstances, full payment of the policy limits does not necessarily satisfy the contractual obligation of good faith; and, the damages recoverable for an insurer's breach of a contractual obligation of good faith and fair dealing may exceed the amount the insurer would have had to pay in the performance of the contract. *See Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 610-11 (1978). Bennett does not challenge the trial court's ruling, however, with respect to any contractual claim he may have had. Rather, he argues that his action for breach of good faith and fair dealing was an action in tort and not in contract.

A breach of contract standing alone does not give rise to a tort action; however, if the facts constituting the breach of the contract also constitute a breach of duty owed by the defendant to the plaintiff independent of the contract, a separate tort claim will lie. *Lawton*, 118 N.H. at 613.

In *Lawton* we recognized that an insurer has a duty of reasonable care in the settlement of a third-party liability claim. Therefore, a breach of that duty may give rise to an action in tort. *See Lawton*, 118 N.H. at 613. In contrast, we held that allegations of an insurer's wrongful refusal to settle or delay in settling a first-party claim do not state a cause of action in tort. *Id.* We recognized an independent action in tort for the former to address the "dilemma presented by the absolute control of trial and settlement vested in the insurer by the insurance contract and the conflicting interests of the insurer and insured." *Dumas v. State Mut. Auto. Ins. Co.*, 111 N.H. 43, 46 (1971).

Although this case involves a first-party claim against an insurer, the issue is not Hartford's wrongful refusal to settle or delay in settling with Bennett. Rather, the characteristics of the alleged relationship between Bennett and Hartford are analogous to the relationship between the insurer and the insured in a third-party liability claim where a breach of

the duty of good faith and fair dealing may give rise to an independent action in tort.

In a first-party claim against the insurer for wrongful refusal to settle or delay in settlement, the insured and the insurer are adversaries; the insured has filed a claim with the insurer to receive a payment allegedly owed under the insurance contract. In a third party claim, however, the insurer and the insured are dealing with a third-party who is an adversary to both the insurer and the insured, and the insurer represents the insured in all dealings with the third party. The insurer is in a position to expose the insured to a judgment in excess of the policy limits through its refusal to settle a case or to otherwise injure the insured by virtue of its exclusive control over the defense of the case. *Lawton*, 118 N.H. at 614. Because the insurer and the insured have conflicting interests, and the insurer has absolute control over the situation, an insurer has a duty to the insured to act in good faith. *Id.*; *see also Douglas v. Company*, 81 N.H. 371, 376-77 (1924).

Here, the relationship between Hartford and Bennett is similar to the relationship between an insurer and an insured in third-party claims. Hartford retained control over the investigation into the cause of the fire, according to Bennett, by threatening to cancel Bennett's policy if he conducted any investigation of his own. Thus, Hartford was in a position to injure Bennett by virtue of its exclusive control. *Cf. Lawton*, 118 N.H. at 614. If Hartford did not act in good faith and exercise reasonable care in its investigation of the General Electric dryer and its relationship to the fire, it could injure Bennett by hindering his ability to gather evidence and to pursue an independent claim against General Electric. *Cf. id.* at 613. Under these unusual and narrow circumstances, Hartford had a duty to deal fairly and act in good faith while conducting the investigation. *Cf. id.* at 613-14.

■ Material issues of fact in this case remain in dispute. Viewing these allegations in the light most favorable to Bennett, Hartford entered a relationship with him, independent of the contract, in which it had a duty of good faith to exercise reasonable care in its investigation into the cause of the fire. *See id.* If Hartford maintained—for three years—that it was engaged in an investigation and ordered Bennett not to pursue his own investigation, when, in fact, Hartford had abandoned its investigation ten days after the fire, it breached a duty of good faith owed to Bennett separate from any duty of good faith that may have been owed under the contract. Because this duty of good faith and fair dealing is independent of the contract, Bennett would have a cause of action in tort. *See id.*

Hartford argues that even if Bennett's allegations are true, summary judgment was still proper because Hartford fulfilled its contractual obligations under the policy by paying the full policy limit. As discussed above, however, the cause of action would not arise from any duties owed under the contract.

■ If it is established that Bennett has a cause of action in tort, his damages as a result of the tort must be separate and distinct from any injury for which he was compensated under the contract so that he does not receive double recovery. Accordingly, we reverse the trial court order granting summary judgment on Bennett's breach of good faith and fair dealing claim.

Bennett also contends that the trial court erred in denying his motion for a nonsuit without prejudice on his remaining four counts. Denying Bennett's motion, the trial court gave him the option to go forward with those claims or to take a nonsuit with prejudice. Bennett made the strategic choice to acquiesce in the nonsuit with prejudice and to appeal the summary judgment ruling. We review the trial court's decision to deny a voluntary nonsuit without prejudice for an unsustainable exercise of discretion. *See Keshishian v. CMC Radiologists*, 142 N.H. 168, 181 (1997); *see also State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

■ The trial court may deny a voluntary nonsuit without prejudice if "the plaintiff has so far committed to the case by act or agreement that it would be unjust to permit the case to be discontinued." 5 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 32.11, at 62 (2003); *see also Total Service, Inc. v. Promotional Printers, Inc.*, 129 N.H. 266, 268 (1987).

The fire that gave rise to this litigation occurred in 1993. Litigation commenced in 1996, when Bennett first filed suit against Hartford. Bennett and Hartford have been engaged in this litigation for more than seven years, appearing before the trial court for, among other things, motions for summary judgment, discovery, and to amend the writ. The trial court issued an order in August 1999, addressing motions for summary judgment with regard to nine counts against Hartford. Bennett amended his writ once in 1999.

■ It is clear that Bennett has utilized the court's resources on numerous occasions. *Total Service, Inc.*, 129 N.H. at 269. The parties have been preparing for trial for seven years, filing discovery motions and developing evidence. To hold that after this lengthy and complex litigation

process the court did not have discretion to deny the motion for nonsuit without prejudice would result in a waste of the court's resources, and it would be unjust to Hartford to permit the suit simply to be discontinued; thus, we hold that the trial court's order is a sustainable exercise of discretion. *See id.*; *Keshishian*, 142 N.H. at 181.

Bennett also asserts that the trial court erred in denying his second motion to amend the writ. The decision to grant or deny a motion to amend rests in the sound discretion of the trial court, and we will not overturn it unless it is an unsustainable exercise of discretion. *Keshishian*, 142 N.H. at 176.

Generally, a court should allow amendments to pleadings to correct technical defects but need only allow substantive amendments when necessary to prevent injustice. *Id.* at 175. A substantive amendment that introduces an entirely new cause of action, or calls for substantially different evidence, may properly be denied. *Id.* at 176.

Despite Bennett's claim that he sought to amend the writ "to clarify the scope and application of two existing counts by expounding upon the core of operative facts already alleged," the trial court found that the amendment was a substantive amendment that would initiate new fact discovery and, thereby, prejudice Hartford. The amendments to counts IV and V would significantly expand the allegations to include the nature and scope of Bennett's insurance policy, which would depend upon events that occurred prior to the fire. As originally pled, the allegations depend upon events and circumstances that arose after the fire.

Further, counts IV and V originally asserted that Hartford did not make timely payment of proceeds to Bennett; if Bennett were permitted to amend the writ, he would allege not only that the payments were not timely, but also that the payments were insufficient because Bennett's policy had guaranteed replacement costs. This would create an entirely new controversy, one in which the *amount* paid becomes an issue in addition to the *timing* of the payments. Accordingly, the amended writ would require substantially different evidence and create an entirely new cause of action; therefore, the trial court's decision to deny Bennett's second motion to amend was a sustainable exercise of discretion.

The final issue is Hartford's cross-appeal of the denial of its motion to compel production of specific documents retained by Bennett. The decision to disallow pretrial discovery is within the sound discretion of the trial judge, *Ross v. Home Ins. Co.*, 146 N.H. 468, 473 (2001), and we will uphold it unless it is an unsustainable exercise of discretion. *See Miller v. Basbas*, 131 N.H. 332, 338 (1988).

Hartford seeks Bennett's entire case file involving his suit against General Electric. Bennett refuses to provide the file because he claims it is protected by the attorney-client privilege and the work product doctrine. Hartford argues that Bennett has impliedly waived his attorney-client privilege by placing at issue in this case the merits of his claims against General Electric. Bennett contends that the documents in the General Electric file are not at issue in this case and the information contained in the file is not actually required for resolution of the case. He argues that Hartford can procure the information it seeks through other sources.

An "at-issue" waiver of the attorney-client privilege is limited to circumstances in which the privilege-holder injects the privileged material itself into the case, such that the information is actually required for resolution of the issue. *Aranson v. Schroeder*, 140 N.H. 359, 370 (1995). We have applied this narrow exception to the attorney-client privilege in the case of ineffective assistance of counsel, because such claims went to the "core of attorney-client communications." *Petition of Dean*, 142 N.H. 889, 891 (1998).

Information protected under the work product doctrine may only be made available if Hartford demonstrates a substantial need for the requested materials, and that it could not without undue hardship obtain the materials by other means. *See Aranson*, 140 N.H. at 370-71; SUPER. CT. R. 35(b)(2).

The trial court found that the privileged communications between Bennett and his counsel were not put at issue in this case. Rather, what is at issue is the loss Bennett claims to have incurred because of Hartford's alleged conduct that prevented him from filing a suit against General Electric at an earlier time when more evidence concerning the dryer's connection to the fire was available. With respect to work product, the trial court found that Hartford could obtain objective information to resolve this issue without suffering undue hardship. The trial court's decision is sustainable, as Hartford has not adequately demonstrated the application of the "at-issue" waiver of attorney-client privilege to the facts of this case, and the privileged communications are not necessary for the resolution of the case. *See Aranson*, 140 N.H. at 370-71. Likewise, Hartford has not demonstrated a substantial need for material protected by the work product doctrine.

Hartford contends that not all the information contained in the sealed General Electric file is protected by privilege or work product, and, therefore, Hartford should at least have access to that information. There

may be unprotected, relevant material in the file; however, Hartford must establish reasonable probability that the file contains such information in order to trigger *in camera* review. *Cf. State v. Gagne*, 136 N.H. 101, 105 (1992). We remand so that the trial court may determine if Hartford has met this burden. If met, the trial court may review Bennett's General Electric file *in camera* to determine which information falls outside the protection of attorney-client privilege and work product, and whether such information should be made available to Hartford.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DUGGAN, J., concurred.